### LISTER *v.* SAKWINSKI.

1. BROKERS—PRINCIPAL AND AGENT—DUTY OF BROKER.

A real estate broker in the employ of his principal, is bound to act for his principal alone, using his utmost good faith in his behalf.

2. SAME—COMMISSION—CONTRACT—CONSIDERATION—VALIDITY.

A promise by one of the principals in an exchange of real estate, after the negotiations were completed, to pay a

On right of real estate broker who acts for both parties to commissions, see notes in 45 L. R. A. 44; 24 L. R. A. (N. S.) 659.

commission to the other party's broker, to whom he owed nothing, is void for want of consideration.

3. SAME—CONSTRUCTION OF CONTRACT.

A clause in a contract signed by the principals in an exchange of real estate, acknowledging that certain brokers had brought about the sale and agreeing to pay the regular broker's commission, construed, in view of 3 Comp. Laws 1915, § 11981, and *held*, to be for the purpose of making written evidence of agreement of the parties to pay their respective brokers the commission on their respective properties, and was no authority for the broker of one principal to maintain an action for commission against the other principal by whom he was not employed.

Error to Wayne; Murphy, J. Submitted April 23, 1919. (Docket No. 95.) Decided May 29, 1919.

Assumpsit by W. Sherman Lister against Nicholas Sakwinski and another for commissions on the sale of real estate. Judgment for plaintiff. Defendants bring error. Reversed, and no new trial ordered.

*Charles Bowles,* for appellants.

*Lucking, Helfman, Lucking & Hanlon,* for appellee.

FELLOWS, J. The defendants owned an apartment house located on East Grand Boulevard in the city of Detroit. They listed it for sale with a real estate agent named Claxton. One La Bounty owned a large farm in Alger county and listed the same for sale with the plaintiff. Defendants and Mr. La Bounty and wife with the assistance of their respective brokers, Claxton and plaintiff, concluded an exchange of their properties. It fairly appears that the apartment house was put in in the trade at $100,000. There was a mortgage on it at the time for $46,000, and La Bounty paid defendants $24,000 in cash and conveyed to them the Alger county farm. This farm was treated in the trade as worth $42,000 and there was a

mortgage on it for $12,000, making its agreed value in the trade above the mortgage $30,000. La Bounty paid plaintiff for his services in the transaction $1,500, which was the regular commission on unimproved property, treating the value of the farm at $30,000. Plaintiff insisted that he was entitled to more commission out of the transaction than was Claxton as he had done more to bring about the deal, and Claxton agreed that he should have $600 out of his commission. Pursuant to an order given by Claxton, defendant gave his check for this amount to plaintiff and settled with Claxton for the balance of $1,450 agreed to be due him for his services in effecting the deal. Subsequently plaintiff requested Claxton to join in a suit against defendants for recovery of a claimed unpaid balance of commissions. This Mr. Claxton refused to do on the ground that he had been paid in full his commission and had no further interest in the matter. Plaintiff brings this action and seeks to recover on the following clause found in the contract for the exchange of properties entered into by defendants and the La Bountys:

"The parties to this agreement hereby acknowledge that W. Sherman Lister and Frank W. Claxton brought about this sale and agree to pay to them the regular broker's commission therefor upon their respective properties."

It is the theory of the plaintiff that by this provision defendants agreed to pay the regular brokers' commission, three per cent. on improved property, to the brokers jointly; that Claxton having refused to join in this proceeding he may recover the three per cent. on the value of defendants' property as agreed in the deal, such recovery being had under the provisions of the judicature act (section 2, chap. 12, Act No. 314, Pub. Acts 1915, 3 Comp. Laws 1915, § 12353), which provides that actions shall be prosecuted in the

name of the real party in interest. This theory being accepted by the trial judge plaintiff recovered. Defendants by appropriate objections, motions for a directed verdict, and requests to charge assert various reasons in denial of their liability. We shall not consider all the grounds urged but will consider sufficient of them to dispose of the case.

It is the claim of the defendants that when the written contract was executed they were not, nor was either of them, under any legal obligation to pay the plaintiff any sum, that they owed him nothing, and if the contract is to be construed as claimed by plaintiff it must fail as to these defendants for want of consideration. It is their further claim that the language of the contract above quoted should be construed that each of the contracting parties agreed to pay their respective broker the regular commission on their respective properties, and that it should not be construed to require the defendants to pay the broker of the other party, or to pay the brokers jointly any sum beyond that which they and their broker had agreed upon; in other words, that each of the parties should pay his own broker. The proofs conclusively establish that La Bounty has paid plaintiff his commission as broker for handling the deal for him. The proofs also conclusively establish that when defendants listed the apartment house with Claxton it was listed for sale at $70,000, and that Claxton's commission at three per cent. would amount to $2,100; that he agreed to and did accept $2,050 in settlement of the commission, $600 of which amount he gave to plaintiff.

The plaintiff, Mr. Lister, was not a middleman in this transaction. He was a broker in the employ of Mr. La Bounty. He is not seeking here to recover a commission from his principal, his employer. He has been paid in full by his principal. He is seeking here to recover a commission from the party with

whom his principal dealt. When plaintiff accepted employment from Mr. La Bounty as his broker the relations of principal and agent were established. Plaintiff's duty was to his principal. Such services as he performed in negotiating and putting through the deal were performed for his employer and they were performed for no one else. That he performed more services, worked harder, devoted more time to the transaction than did defendants' broker, Mr. Claxton, might appeal as it did to Mr. Claxton, but it created no legal liability on the part of defendants. Mr. La Bounty had employed him to perform these services, defendants had not. The services were performed for Mr. La Bounty, not for the defendants. When plaintiff accepted employment as Mr. La Bounty's broker he was bound to act for Mr. La Bounty alone, using his utmost good faith in his behalf. 4 R. C. L. p. 270; and public policy does not encourage the collection of commissions by a broker from the party with whom his principal deals. *Leathers* v. *Canfield,* 117 Mich. 277 (45 L. R. A. 33); *Pinch* v. *Morford,* 142 Mich. 63. Neither the law nor good morals required the defendants to pay to the plaintiff or to any one except their broker, Claxton, any commission for putting through the deal.

When the parties had concluded their negotiations and met to put their engagements in writing these defendants owed the plaintiff nothing. There was no liability on their part to him. If, therefore, we accept the theory advanced by plaintiff's counsel and accepted by the trial judge, that the provision of the contract above quoted was a promise on the part of defendants to pay a commission to plaintiff or to any one but defendants' broker, Mr. Claxton, such promise was without consideration and no recovery can be had upon it.

But we are not persuaded when we take into con-

sideration the surrounding circumstances that the parties intended by this clause of their agreement to obligate themselves beyond the payment to their own broker of his commission. As we have already stated, when defendants listed this property with Mr. Claxton it was listed at $70,000. He does not seem to have sought to take advantage of the fact that in the trade it was put in at $100,000. His failure to exact a commission on the latter figure does not inure to the benefit of plaintiff. Under the statute of frauds (3 Comp. Laws 1915, § 11981) an agreement to pay commission on the sale of real estate must be in writing. We do not consider the question of whether this agreement complies with the statute, but we entertain no doubt in light of all the surrounding circumstances that the insertion of this clause in the contract was for the purpose of making written evidence of the agreement of the parties with their respective brokers to pay to them—each of them—their commission on the respective properties.

The judgment of the circuit court is reversed, but with no new trial.

BIRD, C. J., and MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred with FELLOWS, J.

OSTRANDER, J. I agree that a proper construction of the contract denies plaintiff's contention, and upon this point concur in reversing the judgment.