SHIREY v. CAMDEN.

1. CONTRACTS—AMBIGUITY—CONSTRUCTION—EXTRINSIC EVIDENCE.
When called upon to construe two writings which indicate the
existence of an ambiguity, a court of equity may resort to
the facts and circumstances surrounding the transaction re-
sulting in their execution.

2. SAME—TITLE-RETAINING CONTRACT—WORKING AGREEMENT—CON-
STRUCTION AS INDEPENDENT CONTRACTS—USURY.
Title-retaining contract as to five machines and a so-called work-
ing agreement whereby buyer of the machines was to pay a
stipulated sum per thousand parts manufactured therewith and
shipped to named purchaser which were executed on the same
day *held*, separate and independent contracts where latter was
not a part of, or a modification of, the former, terms of pay-
ment for machines set up in former were definite and certain
and latter agreement did not set up a different method of pay-
ment at a different time and construction as one agreement
would render transaction usurious.

3. SAME—PAST CONSIDERATION.
A past consideration, such as assistance rendered plaintiff in
procuring a contract with a third party, would not constitute
a legal consideration for a later agreement to pay party whose
efforts in such respect had terminated before the agreement
for which such efforts were claimed to have been expended
was executed.

4. SAME—CONSIDERATION FOR SO-CALLED WORKING AGREEMENT WITH
SELLER.
Where parties to title-retaining contract for sale of machinery
wherein terms of payment were definite and certain entered
into a so-called working agreement whereby buyer was to pay
seller a stipulated sum per thousand parts manufactured
thereon and shipped to named purchaser, apparently executed
as an afterthought on the same day as title-retaining con-
tract, the working agreement was without consideration, there

Usury, see 2 Restatement, Contracts, §§ 526–537.
Failure of consideration for unilateral contract, see 1 Restatement,
Contracts, §§ 75, comment d, 78.

being no requirement that the seller perform any services for such payment in the working agreement and value of such services as the seller is claimed to have rendered and not otherwise paid for was insignificant when compared to the amount claimed thereunder.

5. SAME—CONSTRUCTION—FINDING AS TO SEPARATE AGREEMENT—CONSIDERATION.

In suit by buyers of machinery under title-retaining contract to restrain seller from repossessing same on ground buyers were not in default and for an accounting as to alleged overpayment, finding that so-called working agreement, entered into by the same parties on the same day, whereby buyer was to pay seller a stipulated sum per thousand parts made thereon and shipped to a named purchaser, was a separate agreement and without consideration, that the buyers had paid for all machinery purchased and were entitled to overpayment made is affirmed.

Appeal from Jackson; Simpson (John), J. Submitted January 24, 1946. (Docket No. 14, Calendar No. 43,090.) Decided March 5, 1946.

Bill by James Shirey and Lyle Hopp, doing business as Shirey & Hopp, against Henry J. Camden to restrain defendant from replevying machines or interfering with plaintiff's business and for money decree. Cross bill by defendant against plaintiffs for money decree and to fasten a lien on machinery. Decree for plaintiffs. Defendant appeals. Affirmed.

*Norman E. Leslie* and *George R. Campbell,* for plaintiffs.

*John J. Gallagher* and *Bisbee, McKone, Badgley & McInally,* for defendant.

BOYLES, J. Plaintiffs are copartners engaged in business as subcontractors machining aircraft parts to be used in the assembly of airplanes. On March 11, 1943, they entered into a written title-

retaining contract with the defendant to purchase from the defendant four certain machines for their use in making aircraft parts. On the same day plaintiffs entered into a separate written agreement, called a "working agreement," to pay the defendant $5 per thousand for a certain part which plaintiffs were to manufacture and ship to the Wright Aeronautical Corporation, under a contract between plaintiffs and the Wright company. On October 18, 1943, plaintiffs purchased from the defendant an additional machine, and at that time these parties signed written "supplements" adding this machine to the original agreements. On February 4, 1944, plaintiffs filed a bill of complaint alleging that the defendant was threatening to repossess the machines under the title-retaining contract, that plaintiffs were not in default, that they would suffer irreparable injury if deprived of the machines, wherefore they sought injunctive relief and an accounting. By stipulation and leave of court, plaintiffs later filed an amended bill of complaint to which defendant filed an answer setting up new matter and seeking affirmative relief, and plaintiffs filed an answer thereto. The case was heard on the amended pleadings and the trial court entered a decree for plaintiffs, from which defendant appeals. The main question here for determination is whether the so-called "working agreement" is valid, or void for want of consideration or usury. Involved in the issue is the question whether there are two separate agreements, or in legal effect only one contract, both writings to be construed together. The divergent claims of plaintiffs and defendant as to the purport and legal effect of the "working agreement" indicates an ambiguity and the need for construing the legal effect of the contracts. In such a situation a court of equity may resort to the facts and circumstances surrounding the transaction.

Plaintiffs operated a small shop in which they ground washers used in airplane parts, using two small screw machines. Defendant was the owner of screw machines which would allow plaintiffs to manufacture as well as grind the washers, which were stored at the place of business of plaintiffs. The parties discussed the sale of these machines by defendant to plaintiffs. Plaintiffs said they would not be interested unless they had a contract, or use for them. Defendant had already been in communication with Wright Aeronautical Corporation relative to an order for the washers. Plaintiffs stated they were interested in buying the machines if they could get an order. About March 7, 1943, plaintiffs and defendant went together to Paterson, New Jersey, talked with the purchasing agent of Wright Aeronautical Corporation who offered to place an order for 5,000,000 washers. The parties then returned to Jackson to consider the matter and on March 10, 1943, a telegram was sent by these parties to Wright Aeronautical Corporation accepting an order for 2,000,000 washers. On the following day, March 11, 1943, plaintiffs and defendant entered into the two written agreements hereinbefore referred to. At the time that these two agreements were signed, the defendant had offered to sell the four machines for $10,000. Plaintiff James Shirey testified:

"And we decided to take them. And he (the defendant) come along and he says, well, this washer business is too good a thing to let slip through his business (fingers ?), and he figured he was allowed $5 a thousand on these washers, and if we wanted the machine we would have to sign this working agreement."

He further testified:

"Well, we didn't have anything else to do. We was down. We couldn't produce. In other words, after

we accepted the order, we had taken the order from Wright and in production on it, we couldn't have bought the machine until—unless we did sign the working agreement. We couldn't produce unless we did that.''

These original agreements are as follows:

Exhibit 1

''Title Until Paid For

''Agreement to sell—Vendor Retaining

''This agreement made this 11th day of March A.D. 1943, by and between Henry J. Camden 825 Hibbard Ave Jackson city—Jackson county of the State of Michigan party of the first part, and Shirey & Hopp Mfg. Co. 1705 W. Michigan Ave. Jackson—Jackson county of the State of Michigan parties of the second part, witnesseth,

''First. That said first party shall and will sell to said second parties the following described property, to wit: 4 No. 53 National Acme Automatic Screw Machines (4 spindle machines—and Geneva index's), and motor driven with 4 HP. motors. Also with equipment consisting of 6 Box-Tools, Drill-Form & Cut-Off Toolholders, pads, collets, feed-shells, cams, machine parts etc. etc., as is where is, free and clear from all incumbrances.
Serial numbers on machines are   8945
                                 8975
                                 9013
                                 10856
upon and after full payment therefor by said second parties of the sum of $10,000, with interest, at the rate of 7 per cent. per annum, in the manner following: $5 upon the execution and delivery of this agreement, $1,995 on or before the 27th day of March A.D. 1943, also eight $1,000 notes payable as follows;—

Note  #1—Due  on  or  before  April  27,  1943
  ”    #2—  ”   ”    ”      ”    May   ”    ”
  ”    #3—  ”   ”    ”      ”    June  ”    ”
  ”    #4—  ”   ”    ”      ”    July  ”    ”
  ”    #5—  ”   ”    ”      ”    Aug.  ”    ”
  ”    #6—  ”   ”    ”      ”    Sept. ”    ”
  ”    #7—  ”   ”    ”      ”    Oct.  ”    ”
  ”    #8—  ”   ”    ”      ”    Nov.  ”    ”

with interest as above mentioned.

"Second. That said second parties shall and will pay for said property said sum of $10,000 and interest, at the time and in the manner above mentioned, at the office of first party in the said city of Jackson Michigan.

"Third. That the title to said property and right to possession thereto shall be and remain in said first party until said sum of $10,000 and interest is paid in full.

"Fourth. That in case of default in any of the payments of principal or interest, when due as above specified, and for 10 days thereafter, the said first party shall thereupon forthwith have the right to declare this contract at an end, and to take immediate possession of said above described property, and in such case, the said property, as well as all payments of principal or interest which shall have been made hereon, shall belong to and be retained by said first party as liquidated damages for nonperformance of this contract on the part of said second parties and for use of and injury to said property. Also parties of 2d part, will insure against fire loss.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

(Signed) "SHIREY & HOPP MFG Co. [Seal]
(Signed) "LYLE H. HOPP.          [Seal]
(Signed) "JAMES SHIREY.          [Seal]
(Signed) "HENRY J. CAMDEN."

Exhibit 2
"Jackson, Michigan
"March 11, 1943

"WORKING AGREEMENT
by
"Shirey & Hopp Mfg. Co. and Henry J. Camden
"Jackson Michigan          Jackson Michigan

---

"The Shirey & Hopp Mfg. Co. agree to pay to Henry J. Camden $5 per thousand, for each thousand of part #2093–D–14 shipped to the Wright Aeronautical Corp., until such time that payment in full has been made on (4) #53 Acme Automatic Screw Machines purchased from Henry J. Camden.

"In event of a change in the product manufactured on the above mentioned machines, and if payment in full has not been made for the machines, then it is agreed that the same ratio of earning will be paid Camden as that earned in manufacturing part #2093–D–14

"Shirey & Hopp Mfg. Co.
(Signed) "Lyle H. Hopp,
(Signed) "James Shirey.
"Wit. (Signed) Charles C. Smith.
(Signed) Henry J. Camden."

On October 18, 1943, plaintiffs having purchased another machine from defendant, to be used for the same purpose as the others, these parties signed "supplements" to the original agreements, as follows:

Exhibit 1–A
"Jackson, Michigan
"Oct. 18, 1943

"This supplement with the agreement of all parties involved, is to be added to and become part of an agreement to sell—title retaining contract, made

by Shirey & Hopp Mfg. Co. and H. J. Camden, on Mar. 11, '43, and said supplement is for the purpose of Henry J. Camden selling Shirey & Hopp Mfg. Co.;—

"One #54 National Acme Automatic Screw Machine, complete with motor, thread spindle, machine parts, collets and feed shells, as inspected, free and clear from all incumbrance, serial #5052, and the price is $2,000 and is to be paid on (2) $1,000 notes, numbered 9 and 10, number 9 is due Dec. 27, 1943, and number 10 note is due Jan. 27, 1944.

"SHIREY & HOPP MFG. CO.
(Signed) "JAMES SHIREY.
(Signed) "LYLE HOPP.
(Signed) "HENRY E. SHIREY.
(Signed) "H. J. CAMDEN."

Exhibit 3

"Jackson, Mich.
"Oct. 18, 1943

"This SUPPLEMENT added to working agreement made by Shirey & Hopp Mfg. Co., and Henry J. Camden (both of Jackson, Michigan) on March 11, 1943 is to change sentence in paragraph one (1) to read;—

" 'until such time that payment in full has been made on (4) #53 Automatic Screw Machines and (1) #54 Acme Automatic Screw Mach. purchased from Henry J. Camden'

SHIREY & HOPP MFG. CO.
(Signed) "JAMES SHIREY.
(Signed) "LYLE HOPP.
(Signed) "HENRY E. SHIREY.
(Signed) "H. J. CAMDEN."

Plaintiffs proceeded to manufacture and ship the washers to the Wright Aeronautical Corporation. They have paid the defendant in full the $10,000 and interest provided for in the original title-retaining contract, and have also paid the defendant an additional $5,140.86, apparently under the

"working agreement." In filing their amended bill of complaint, plaintiffs assert that the so-called "working agreement" is unilateral, without consideration if construed as a separate agreement and void as being usurious if construed as a part of the original title-retaining contract. Plaintiffs claim that as a whole they have overpaid the defendant, that they do not owe the defendant any further sum of money, that the $2,000 and interest for the fifth machine has been paid in full, ask for an accounting and a return of their overpayment. The defendant in his answer and cross bill asserts that the working agreement (exhibit 2) is "a separate legal contract * * * in no way related to exhibit 1," that it is not void, that plaintiffs still owe him $2,000 and interest for the fifth machine and a balance of $9,240.35 plus interest, unpaid under the working agreement. There is no dispute as to amounts, the trial court found that plaintiffs had paid in full for the fifth machine, had overpaid the defendant the sum of $3,105.86, and entered decree for plaintiffs accordingly.

The defendant strenuously asserts that the so-called working agreement is a separate and distinct agreement; that the two contracts should not be construed as one, but as "separate and independent contracts." To that extent we are in agreement with the defendant. There is nothing in the two written agreements themselves, nor in the testimony of the parties, to establish that the working agreement (exhibit 2) is either a part of, or a modification of, the title-retaining contract. The terms of payment for the machines set up in exhibit 1, by cash and deferred monthly payments evidenced by eight promissory notes, are definite and certain. There is no ground for concluding that instead of such definite payments to be made as set up in the title-

retaining contract, the "working agreement" should be construed as setting up a different method of payment at a different time on the basis of $5 for each thousand washers delivered to the Wright company. We conclude that the working agreement is a separate and distinct contract.

The question then arises, what is the consideration, if any, for the promise of plaintiffs, in the working agreement, to pay the defendant $5 per thousand for washers shipped to the Wright Aeronautical Corporation? The record bears out plaintiffs' claim that the working agreement was in the nature of an afterthought of the defendant. The terms of the title-retaining contract for the machines had been orally agreed upon, plaintiffs had accepted an order to deliver washers to the Wright Aeronautical Corporation with which contract they could not comply without the four machines, plaintiffs did not yet have a written contract from the defendant for the purchase of the four machines, and under these circumstances the defendant exacted from the plaintiffs the so-called "working agreement." If the two written contracts were to be considered as one, and construed together, there might be some ground for the defendant claiming that the consideration to plaintiffs for signing the working agreement was to get the defendant to carry out his oral agreement to sell to plaintiffs the machines necessary for plaintiffs to carry out their contract with the Wright company. This would leave the defendant exposed to plaintiffs' claim that the transaction was usurious (see *Sultan* v. *Central Life Ins. Co. of Illinois,* 302 Mich. 425, 437). However, the defendant claims that exhibits 1 and 2 are entirely separate contracts, that the working agreement is entirely separate and based on a different consideration.

One of the elements which defendant claims enters into the consideration for the working agreement is:

"That appellant had been in communication with Wright Aeronautical before he made any deal with appellees for the sale of the machines, and that he assisted in and was instrumental in obtaining the contract from Wright Aeronautical.   *   *   *
"This working agreement did not involve the sale of the machinery, but was a percentage or commission to be given to defendant on the contract with Wright Aeronautical and for services such as those mentioned above which appellant rendered and which no one disputes."

The contract between plaintiffs and the Wright Aeronautical Corporation had been entered into before the working agreement was made. That part of their dealings was a *fait accompli*, a past consideration which would not constitute a legal consideration for the subsequent working agreement. Any promise by plaintiffs in exhibit 2 to pay a commission to defendant for having obtained the contract with the Wright company would be void for want of consideration. *Lister* v. *Sakwinski*, 206 Mich. 121; *Sultan* v. *Central Life Ins. Co. of Illinois, supra*. The only other consideration for the working agreement claimed by defendant is that after the agreements were entered into he rendered various services to plaintiffs, such as helping to set up the machines, made a trip to Wright Aeronautical Corporation in connection with a threatened rejection of several thousand pieces, and helped plaintiffs obtain an increase in contract price. Opposed to this, the plaintiffs showed that they had paid Scott & Camden Company, a firm of which defendant was a member, several bills for the kind of services defendant claims he rendered plaintiffs as consideration for the working agreement. The fact that the

working agreement itself did not require the defendant to perform any services as consideration for receiving $5 per thousand washers shipped by plaintiffs to the Wright company indicates the unilateral nature of the working agreement.

The defendant claims that under the terms of the working agreement he has already become entitled to a sum amounting to nearly $15,000 and that he is entitled to this as compensation for the services which the defendant claims he has rendered plaintiffs, that this is the real consideration for the "working agreement." The insignificance of the services defendant claims he has rendered, as shown by the record, militates against defendant's claim that he was to receive such an exorbitant amount for such services. A comparison of the amount claimed by defendant under the "working agreement," $14,381.21, with the total price for which he sold the five machines, $12,000, further indicates the improbability of any claim that the defendant was to be paid such sums for services to be rendered. See *Cooper* v. *Ross,* 232 Mich. 548.

The circuit judge held that the equities were with the plaintiffs, that the so-called working agreement as a separate agreement was without consideration, that plaintiffs had paid for the fifth machine and were entitled to recover the sum overpaid to the defendant. We reach the same result. The decree is affirmed, with costs to appellees.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, NORTH, and STARR, JJ., concurred.