Jerry SAWYER, Trustee of Leon Spinks,
Plaintiff-Appellant,

v.

Bob ARUM, Top Rank, Inc., and Bob
Arum Enterprises, Inc., Jointly and
Severally, Defendants-Appellees.

No. 81–1060.

United States Court of Appeals,
Sixth Circuit.

Argued June 25, 1982.

Decided Oct. 13, 1982.

Elliott S. Hall, Hall, Andary & Bilicki, Detroit, Mich., for plaintiff-appellant.

Walter J. Goldsmith, Birmingham, Mich., for defendants-appellees.

Before JONES and KRUPANSKY, Circuit Judges and ALLEN,* District Judge.

KRUPANSKY, Circuit Judge.

This is an appeal from a judgment entered upon a trial to the court which held that a purported contract between plaintiff Jerry Sawyer (Sawyer) and defendant Bob Arum (Arum) was not, in fact, the entire agreement between the parties and accordingly could not support an action for breach. Because the trial court properly resolved the conflicting testimony upon this issue in accordance with applicable law, this Court affirms.

All the facts but the ultimate fact at issue in this matter are not disputed. Sawyer was a trust officer in a Detroit bank administering funds for heavyweight boxer Leon Spinks (Spinks) when he met with Arum and an attorney for Spinks on April 12, 1979 to discuss future boxing matches involving Spinks. Arum is, and was then, a full time boxing promoter.

Arum offered to stage a fight between Spinks and one Gerrie Coetzee (Coetzee), with Spinks to receive $100,000 plus a percentage of gate receipts in excess of $250,000.

The evidence adduced at trial established that Sawyer countered the offer by noting that Spinks was then involved in litigation with his manager that would make necessary a provision for more money for Spinks in the contract and some specific compensa-tion for Sawyer, who would function as an interim manager. Arum thereupon counter-offered with a "package" of three documents: first, an agreement under the terms of which Spinks would receive $100,000 for the match as previously offered; second, an option for Arum to promote future bouts involving Spinks which would provide Spinks with immediate cash and the prospect of future income; and third, an agreement to compensate Sawyer directly in a minimum amount of $25,000. Arum testified at trial, without contemporaneous objection from Sawyer, that all three documents were "one integral package" which required only Spinks' signature on the underlying fight contract.

Spinks did not sign the bout agreement and, when informed of this fact, the testimony is unrefuted that Arum instructed Spinks' attorney to "rip up" *all* of the documents in the package.

On April 24, Sawyer induced Arum to return to Detroit to further discuss promoting a fight with Spinks and Coetzee. At a meeting with Arum, Sawyer produced the fight contract Spinks had refused to sign, which had originally called for Spinks to receive $100,000, and showed Arum that the first figure was lined out and $250,000 had been inserted. Arum, who had signed the document when it contained the $100,000 amount and had been presented conjointly with the other documents, thereupon re-signed the altered contract for $250,000. The option contract and Sawyer's compensation agreement were neither produced or discussed at this meeting.

It is elementary that an appellate court may not set aside findings of fact "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses * * *." Fed.R.Civ.P. 52(a). Accordingly, the factual conclusions rendered by a district court sitting without a jury are binding on appeal unless this Court is left

---

* The Honorable Charles M. Allen, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

with a definite and firm conviction that a mistake has been made. *Thompson v. National Railroad Passenger Corp.,* 621 F.2d 814 (6th Cir. 1980), *cert. denied,* 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497. It is the appellant who must shoulder the burden of proving such a mistake, *Godley v. Kentucky Resources Corp.,* 640 F.2d 831 (6th Cir. 1981), and this burden is not met merely by demonstrating a conflict in the testimony, *Walling v. General Industries Corp.,* 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); *Godley v. Kentucky Resources Corp., supra,* nor by seeking to redetermine the credibility of witnesses. *NLRB v. S. E. Nichols of Ohio, Inc.,* 472 F.2d 1228 (6th Cir. 1972). Moreover, the appellate court must review the facts in the light most favorable to the present appellee. *Drayton v. Jiffee Chemical Corp.,* 591 F.2d 352 (6th Cir. 1978); *United States v. Summit Fidelity & Surety Co.,* 408 F.2d 46 (6th Cir. 1969).

█ It is clear that, viewed in the light most favorable to Arum, the evidence is fully supportive of the trial court's conclusion that the three documents at issue were integrated into a single agreement. Initially, the evidence of the negotiations underlying the three documents is fully consonant with the conclusion of the district judge. As noted, the testimony was that the three documents were conceived as a response to certain difficulties with the first fight agreement articulated by Sawyer. Therefore, the genesis of the three documents is plainly in the same negotiations as those concerning the single fight agreement. Moreover, the three document counter-offer by Arum was drafted contemporaneously with those negotiations and, taken together, had the obvious and immediate effect of replacing the proposed single document as the complete embodiment of the negotiations.

Further, the evidence of the parties' conduct subsequent to executing the documents is consistent with the court's conclusion. Upon being informed that Spinks would not sign one of the documents in the package, Arum's immediate response was to instruct Spinks' attorney to destroy "everything" drafted the day before. Having ordered the three component documents of the first deal destroyed, it is perfectly plausible, given the reasons underlying the drafting of the package agreement, that Arum considered the redrafted fight agreement, incorporating a substantial increase in money for Spinks, to embody Spinks' new position on the same economic issues which had demonstrably animated the negotiations from their inception and to therefore replace the other documents representing the parties previous resolution of those issues.

█ More fundamental, however, is Arum's clear and direct testimony that he initially offered the three documents as "one integral package". In circumstances, such as here, where intent is a critical finding of fact, the law is well-settled and straightforward that the fact finder must assess credibility. *See Godley v. Kentucky Resources Corp., supra.* In the case at bar, the trial court credited Arum's testimony as to intent and such finding is completely harmonious with the circumstantial evidence. Accordingly, viewing the facts most favorably to Arum and mindful that the findings of the trial judge may not be reversed insofar as they rest upon resolving conflicts of testimony or evaluating credibility, this tribunal cannot accept the contention of the appellant that the district court was "clearly erroneous" in its findings of fact.[1]

---

1. The dissent suggests that the district court erred in finding that the three documents constituted a single agreement since there is no evidence which demonstrates that Arum ever communicated this fact to Sawyer. However, we do not find the absence of such evidence troubling. Often the parties will disagree on whether several documents constitute a single contract, and there will be no evidence that either party communicated his belief as to the documents' integration, or lack thereof, to the other. *See, e.g., Shirey v. Camden,* 314 Mich. 128, 130, 22 N.W.2d 98 (1946); *Bed v. Fallon,* 307 Mich. 466, 12 N.W.2d 396 (1943). It is precisely the existence of the parties' diverging claims which requires the Court to examine the facts and circumstances surrounding the transaction. Based on this examination, a court

■ Further, it is clear that the trial court properly relied upon the extrinsic evidence of the sequence of negotiations and intent of the parties to find that the otherwise unambiguous document at bar was not the full agreement of the parties.

The present case is controlled by Michigan law inasmuch as Michigan was "the situs or place where the contract was entered into." *Wells v. 10–X Manufacturing Co.,* 609 F.2d 248, 253 (6th Cir. 1979). The cardinal principle of Michigan contract interpretation requires the court to discern the intent of the parties. *Central Jersey Dodge Truck Center, Inc. v. Sightseer Corp.,* 608 F.2d 1106 (6th Cir. 1979). Indeed, it has been said that all other rules of interpretation are subordinate to this rubric. *Goodwin, Inc. v. Orson E. Coe Pontiac, Inc.,* 392 Mich. 195, 220 N.W.2d 664 (1974).

■ Contrary to the intimation of the appellant that some facial ambiguity in the contract is required to trigger the consideration of extrinsic evidence in this case, Michigan's mandate to effectuate the contracting parties' intent has authoritatively been construed to require an examination into the circumstances surrounding a contract even where no ambiguity is apparent on the face of a document:

> [E]ven where the writing is not ambiguous on its face, the circumstances under which the parties contract may be looked at to establish an ambiguity, as well as to indicate the proper choice of possible meanings, and the common knowledge and the understanding of the parties themselves as shown by their previous negotiations is sometimes such a circumstance.

*Goodwin, supra* 392 Mich. at 210, 220 N.W.2d 664. In other words, extrinsic or parol evidence may be admitted in Michigan to establish both the existence of, and to ultimately resolve, a contract ambiguity such as the presence of other agreements between the parties.

The Michigan Supreme Court explicitly sanctioned such a utilization of extrinsic evidence in a matter highly similar to the one at bar in *NAG Enterprises, Inc. v. All State Industries, et al.,* 407 Mich. 407, 285 N.W.2d 770 (1979); wherein the court stated:

> The issue raised by this case is whether evidence extrinsic to a written document, unambiguous on its face, may be used to establish that the document did not represent the entire agreement of the parties. The trial court and the Court of Appeals held that the parol evidence rule precluded the use of extrinsic evidence and concluded that the plaintiff was entitled to summary judgment. We disagree and reverse.
>
> This analysis overlooks the prerequisite to the application of the parol evidence rule: there must be a finding that the parties intended the written instrument to be a complete expression of their agreement as to the matters covered. *Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on this threshold question of whether the written instrument is such an 'integrated' agreement.* As we said in *Goodwin, Inc. v. Orson E. Coe Pontiac, Inc., supra:*
>
> > 'A number of well-established exceptions to the parol evidence rule have been recognized, however, by Michigan courts. For example, the rule does not preclude admission of extrinsic evi-

---

properly may infer that the documents should be construed as are. *See, e.g., Bed v. Fallon, supra* at 472, 12 N.W.2d 396. This conclusion appears to be in accord with several cases which hold:

> The general rule is that in the absence of anything to indicate a contrary interpretation, instruments executed at the same time by the same parties, for the same purpose and in the course of the same transaction will

be read together, it being said that they are, in the eye of the law, one instrument. *Interstate Construction Co. v. United States Fidelity & Guaranty Co.,* 207 Mich. 265, 274, 174 N.W. 173 (1919); *Beacon Plaza Shopping Center, Inc. v. Tri Cities Construction & Supply Co.,* 2 Mich.App. 415, 426, 140 N.W.2d 531 (1966); *see also West Madison Inv. Co. v. Fileccia,* 58 Mich.App. 100, 226 N.W.2d 857 (1975).

dence showing: that the writing was a sham, not intended to create legal relations, *Tepsich v. Howe Construction Co.,* 377 Mich. 18, 23–25, 138 N.W.2d 376 (1965); that the contract has no efficacy or effect because of fraud, illegality, or mistake, *Rood v. Midwest Matrix Mart, Inc.,* 350 Mich. 559, 564–567, 87 N.W.2d 186 (1957); *Schupp v. Davey Tree Expert Co.,* 235 Mich. 268, 271, 209 N.W. 85 (1926); *that the parties did not "integrate" their agreement, or assent to it as the final embodiment of their understanding, Mardon v. Ferris,* 328 Mich. 398, 400, 43 N.W.2d 904 (1950); *Wagner v. Egleston,* 49 Mich. 218, 13 N.W. 522 (1882); or that the agreement was only "partially integrated" because essential elements were not reduced to writing, *Brady v. Central Excavators, Inc.,* 316 Mich. 594, 25 N.W.2d 630 (1947). 392 Mich. 204, 220 N.W.2d 668.

285 N.W.2d at 771 (emphasis added).

Pursuant to the clear and controlling pronouncements of the Michigan Supreme Court, it is plain that the district court was not obligated to find evidence of facial ambiguity in the contract prior to considering extrinsic evidence of intent herein. Indeed, as specifically noted in *NAG Enterprises,* the intent of the parties to integrate "prior or contemporaneous agreements or negotiations" is a "threshold" issue to interpreting an agreement. Simply stated, the identity of the full agreement must be ascertained prior to any interpretation of that agreement.

Inasmuch as proof of the entire agreement between the parties rests upon a factual finding reflecting the intent of the parties in arriving at their agreements; and inasmuch as the trial judge was presented with direct testimony on this issue, not inconsistent with the circumstantial evidence of intent, the Court hereby affirms the decision below.

ALLEN, District Judge, dissenting.

This is an appeal from a judgment entered after a nonjury trial in which the District Court held that appellant, Jerry Sawyer (Sawyer) was not entitled to recover $25,000 from appellee, Bob Arum, because of an alleged breach of contract by Arum.

The testimony indicates that Sawyer was a trust officer in a Detroit bank administering funds for heavyweight boxer Leon Spinks when he met with Arum and Spinks' attorney on April 12, 1979 to discuss future boxing matches involving Spinks. Arum is, and was then, a full-time boxing promoter. On that date Arum presented to Sawyer a letter which obligated Arum and Top Rank, Inc. and Bob Arum Enterprises, Inc., his corporations, to pay Sawyer the sum of $25,000 if Spinks should lose his fight to Gerrie Coetzee, or if he should win that fight and did not participate in a championship match in September or October, and Arum's corporations nevertheless promoted a heavyweight championship. This sum was to be paid for promotional and other services which Sawyer had agreed to render to Top Rank, Inc. and Bob Arum Enterprises, Inc. in connection with bouts in which Spinks would participate, including a bout with Coetzee.

In addition to this letter, Spinks' attorney, Sanford Roth, and the parties to this action, discussed a document entitled "Bout Agreement" which, at that time, called for Spinks to fight Coetzee in June, 1979 in Monte Carlo for $100,000 and 50% of all revenues in excess of $250,000. In addition, another document was presented in the form of a letter purporting to grant to Bob Arum Enterprises, Inc., the option to promote a heavyweight championship bout between Spinks and another contender in the event Spinks defeated Coetzee.

Following the discussion of these documents and the acceptance by Sawyer of the letter agreement obligating Arum to pay him $25,000, the Bout Agreement and the Agreement to grant Arum the sponsorship of a championship bout were taken to Spinks, who insisted on receiving $250,000 as a guarantee for fighting Coetzee. The Bout Agreement was then changed to reflect acceptance of the $250,000 demand

made by Spinks and fully executed on April 24, 1979.

In addition, a written supplement was added to the option to promote a heavyweight championship bout, and that document was signed by Arum in two places and by Spinks. Also, it should be noted that the Bout Agreement was not rewritten and prepared on a new document but remained as it was, subject to interlineations made by Spinks and approved by Arum. The letter agreement between Sawyer and Arum is not ambiguous and obligates Arum to pay Sawyer $25,000 in the event that he renders the services called for in the document.

No evidence was produced as to any discussion between Arum and Spinks which would reflect that it was their understanding that Sawyer would receive the $25,000 only in the event that Spinks signed the Bout Agreement in its original form providing for him the $100,000 minimum. The testimony upon which the District Judge did rely in this respect in his opinion was that of Arum, wherein Arum stated that the three documents were related and were one package. Arum did not testify that he at any time told Sawyer this was the case or that any discussion was had to this effect.

The District Judge and Judge Krupansky, in his opinion, rely to some extent upon testimony by Arum to the effect that he instructed Spinks' lawyer to tear up the three documents of April 12, 1979 on the day following the meeting between the parties and Roth. This testimony does not reflect or indicate in any way a meeting of minds between Arum and Sawyer. It adds nothing in the way of substantial evidence to Appellant's contention that the $25,000 letter agreement was contingent upon acceptance of the other two documents in their original form. It is interesting to observe that, in fact, the three documents remained in their original form subject to the interlineations and addenda described above.

While it is true that Michigan law allows the Court to consider parol evidence in determining whether an agreement was only partially integrated because essential elements were not reduced to writing, see *Brady v. Central Excavators, Inc.,* 316 Mich. 594, 25 N.W.2d 630 (1947), the fact remains that the parol evidence which Arum produced was simply conclusory and unilateral in nature (i.e. not communicated to Sawyer) and did not in any way reflect an understanding between the parties that the $25,000 document was not a separate document standing on its own.

Recognizing the force of Federal Rule of Civil Procedure 52(a), that the findings of a trial court should not be reversed unless clearly erroneous, and recognizing that Judge Joiner had the right to disregard completely the testimony of Sawyer, I am left with the fact that the Agreement which purports to be a separate Agreement has not been shown to be anything but that by the testimony of Arum. Therefore, I would reach the conclusion that the District Judge erred in finding that there was no contract between Sawyer and Arum.

Since no findings were made by the District Court with respect to whether or not Sawyer performed the services that were required of him under the contract, I would have remanded to the District Court for decision on this issue.