782 F.2d 1042
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
FEDERAL DEPOSIT INSURANCE CORP., in its separate corporate
capacity, Plaintiff-Appellee
v.
MIKE R. ALLEN, et al., Defendants, HAL ROE, Defendant-Appellant.
 84-5433
 United States Court of Appeals, Sixth Circuit.
 12/23/85
 
 Before: MARTIN and CONTIE, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 Hal Roe appeals a judgment for the FDIC holding him jointly and severally liable on a note payable to the United American Bank in Hamilton County at Chattanooga, Tennessee. Mike Allen, Valley Machinery Corporation, and Valley Machinery Rental & Leasing, Inc. were also held jointly and severally liable but have not appealed. The note was part of a transaction to extinguish the personal liability of Roe to the United American Bank in Knoxville resulting from his dealings with Valley Machinery Corporation and Valley Machinery Rental & Leasing, Inc. The court found Roe liable on the note by piercing the corporate veil between Roe and his companies and by finding that Roe had been involved in an elaborate scheme of fraud.
 
 
 2
 The roots of this transaction are found in 1977 when Bull Run Oil Company, Inc. was incorporated in Tennessee. Jacob Butcher was president of the company. In November 1979, Bull Run acquired all the stock of the General Equipment Corporation, the John Deere equipment dealer for Knoxville, Tennessee. Roe, a friend of Butcher's, was named president of General Equipment and served as a director. The other director was Butcher. Effective December 31, 1980, General Equipment changed its name to Valley Machinery Corporation. In January 1981, Mike Allen became vice-president and general manager of Valley Machinery. On June 17, 1982, Bull Run changed its name to Valley Management Corporation.
 
 
 3
 On June 12, 1981, a charter was filed for Valley Rental & Leasing, Inc., a company organized to rent and lease John Deere equipment. The minutes of the corporation note that the incorporater agreed to sell Roe 500 shares of stock for $100 per share on June 15, 1981. An unsigned stock subscription agreement to this effect was in the minutes. Directors of the company included Roe and Butcher. The directors elected Butcher to be chairman, Roe to be president, and Allen to serve as vice-president. In August 1981, Valley Rental & Leasing, Inc. changed its name to Valley Machinery Rental & Leasing, Inc. No stock certificates were ever issued by this company, but Roe testified that he owned all the stock in the company and that no one else had any ownership interest in it.
 
 
 4
 Valley Machinery Rental & Leasing, Inc. operated from the same offices as Valley Machinery Corporation. Valley Rental did not pay salaries to any employees, used the same telephone listing as Valley Machinery, and used the sales and accounting staff of Valley Machinery. The books for Valley Rental and Valley Machinery were all kept from the same office. Valley Rental bought essentially all of its equipment from Valley Machinery.
 
 
 5
 From August 1981 to July 1982, Roe individually signed promissory notes for over one million dollars and then used the proceeds in a variety of ways. Roe received notes from Valley Machinery in an amount equal to these loan proceeds. As of August 19, 1982, the United American Bank in Knoxville held all of the promissory notes signed individually by Roe. On August 19, 1982, Allen individually signed a $100,000 note at United American Bank in Knoxville and deposited the proceeds to his personal account. In return for a personal check from Allen for $100,000, Valley Machinery executed a $100,000 note to him. Butcher owned or controlled both the United American Bank in Knoxville and the United American Bank in Hamilton County.
 
 
 6
 In December 1981, Roe discussed with Butcher the possibility of resigning. On September 13, 1982, Roe told Butcher of his intention to resign and the two then met on September 15 to discuss the resignation and Roe's personal notes. The district court found that as of September 15, 1982, Roe had several individual notes with Butcher's United American Bank in Knoxville for a total of outstanding principal of $1,149,457.32. The accrued interest on the principal was $24,696.17 for a total debt of $1,174,153.49. Roe held five notes payable by Valley Machinery in total principal amount of $1,149,457.32.
 
 
 7
 On behalf of Valley Rental, Allen executed a promissory note dated September 15, 1982 to the United American Bank in Knoxville for $1,174,153.49 with the stated purpose of buying out Roe. Again on behalf of Valley Rental, Allen executed a promissory note dated September 16, 1982 to the United American Bank in Hamilton County in the amount of $404,000; this note is the subject of the suit. The proceeds of these two loans were comingled in the Valley Rental account.
 
 
 8
 Valley Rental transferred $1,575,000 to Valley Machinery by check dated September 16, 1982 which was deposited in Valley Machinery's account on September 17. In payment of its notes to him, Valley Machinery then issued to Roe one check for $674,153.49 and another for $450,000. Valley Machinery also issued Mike Allen two checks on September 17, one for $101,438.35 and the other for $50,000. This transaction cancelled Valley Machinery's $100,000 note to Allen. Allen issued Roe a personal sheck dated September 15, 1982, for $50,000 in exchange for his Valley Rental stock and a check to United American Bank in Knoxville dated September 14, 1982, for $100,000 to retire his August 19, 1982, personal note in that amount. As shown by his account statement and deposit slip, Roe deposited the two Valley Machinery checks and Allen's check in his personal acount on September 17, 1982. In a personal check dated September 15, 1982, for $1,174,153.49, Roe paid off his five outstanding promissory notes to the United American Bank in Knoxville. Hal Roe and Mike Allen had thus used these transactions to transfer well over one million dollars of personal debt to Valley Rental. The district court explicitly noted the inconsistent dating of the notes, checks and deposit slips involved in the transactions. There were no contracts or documents detailing these transactions and Roe never transferred any stock certificates to Allen. Moreover, as stated by the district court and supported by the record, although Roe claims he resigned on September 15, 1982, he continued to work at least until October 17, 1982, and was paid through May 1983 at which time Valley Machinery gave him a note for six months of severance pay.
 
 
 9
 The suit to recover on the $404,000 note was originally brought by the United American Bank in Hamilton County. Following the bank's failure and offer of receivership to the FDIC by the Tennessee Commissioner of Banking, the FDIC became receiver. The FDIC in its corporate capacity eventually purchased the note and removed this action to the United States District Court in Chattanooga. Jurisdiction is appropriate under 12 U.S.C. Sec. 1819(4) which states in part that '[a]ll suits of a civil nature at common law or in equity to which the [FDIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof . . ..'
 
 
 10
 Here we review under the 'clearly erroneous' standard and given this, we realize 'due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.' Fed. R. Civ. P. 52(a). The facts are reviewed in a light most favorable to the FDIC. Sawyer v. Arum, 690 F.2d 590, 592 (6th Cir. 1952).
 
 
 11
 Here Roe claims that the corporate veil between himself and Valley Rental and Valley Machinery should not have been pierced because he did not exercise domination and control over the companies when the loan was made from the United American Bank in Hamilton County. We disagree.
 
 
 12
 It has been long recognized that there are times when form should give way to substance and "the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice." First Nat. City Bank v. Banco Para El Com., 462 U.S. 611, 629 (1983) (quoting Taylor v. Standard Gas Co., 306 U.S. 307, 322 (1939)). See also Bangor Punta Operations v. Bangor & A. R. Co., 417 U.S. 703, 713 (1974) ('Although a corporation and its shareholders are deemed separate entities for most purposes, the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy.').
 
 
 13
 The test whether to pierce the corporate veil is a flexible one. In this case in determining whether to disregard the corporate entity, the district court properly considered many factors including the nonissuance of stock certificates, the sole ownership of stock by one individual, and the failure to maintain arms length relationships among related entities. Roe was president of both Valley Rental and Valley Machinery and the district court found that they had been manipulated in a scheme to defraud the banks and bank examiners over a period of years. Roe's participation in the scheme was substantial and it is clear that Roe knew or should have known that his final buy-out transferring his individual liability with the United American Bank in Knoxville to Valley Rental was conducted improperly. Given the inconsistent dating of the checks, notes, and deposit slips and other irregularities found by the district court and the fact that Roe worked at least until October 1982 and was paid through May 1983, it is clear that Roe had sufficient domination and control that he should be held liable on the loan from United American Bank in Hamilton County. The manipulation of Valley Rental saddled it with enormous debt that it could not pay and to allow Roe now to disclaim any liability on the loan would work an injustice on the banking system. Under the totality of the circumstances of Roe's course of conduct with the Butcher entities, we affirm the district court's judgment holding Roe liable to the FDIC on the $404,000 note to the United American Bank in Hamilton County. No attorneys' fees will be awarded, but the FDIC will be reimbursed for the court costs of the appeal.