FIRST NATIONAL BANK OF YPSILANTI *v.* REDFORD
CHEVROLET CO.

1. GUARANTY—CONTRACTS—CONSTRUCTION—INTENT.
   In construing a contract of guaranty, the intention of the parties
   should govern.

2. SAME—CONSTRUCTION FOR COURT IF NOT AMBIGUOUS.
   Construction of a contract of guaranty is a question of law for
   the court where the instrument, taken in its entirety, is not
   ambiguous.

3. SAME—CONSTRUCTION—INTENT.
   Contracts of guaranty are to be construed like other contracts,
   the intent of the parties as collected from the whole instrument
   and the subject-matter to which it applies.

4. SAME—CONSIDERATION—RENEWAL.
   Contract of guaranty of note to bank *held,* supported by con-
   sideration where note was renewed for 60 days and surrendered
   for the one on which suit was brought.

5. SAME—RENEWAL—CONSTRUCTION.
   Contract of guaranty of note to bank *held,* to cover renewal note
   sued upon given in payment of existing note where contract
   provided for payment of notes which evidence present or future
   loans, possession of note was to be conclusive unless direct
   written evidence to the contrary was produced, and contract
   was to cover loans made before revocation until same were
   paid.

6. SAME—INTENT—EVIDENCE.
   That guaranty contract to bank covered renewal note given for
   one existing at time contract was signed *held,* indicated by
   fact that corporate maker of note had moved main office to
   another city, no loan was made when guaranty was given, or
   none made thereafter and no evidence any were contemplated.

7. EXECUTION OF INSTRUMENTS—JOINT MAKERS—DELIVERY.
   It is presumed conclusively that one of two joint makers of a
   note had authority from the other to deliver it, if he does so.

8. GUARANTY—EVIDENCE—JOINT LIABILITY.

In action by bank on contract of guaranty and renewal note alleged to be covered thereby, evidence *held*, to show that the guaranty covered renewal note, where one of two joint guarantors signed it and entrusted delivery to other who signed and delivered it.

Appeal from Wayne; Ferguson (Homer), J. Submitted October 9, 1934. (Docket No. 53, Calendar No. 37,994.) Decided January 7, 1935.

Assumpsit by First National Bank of Ypsilanti against Redford Chevrolet Company, a Michigan corporation, William J. Wink and W. P. Wink on note and contract of guaranty. Guy A. Spencer, conservator, and B. F. Schumacher, receiver, were added as parties plaintiff. Judgment for plaintiffs against defendants Redford Chevrolet Company and William J. Wink. Plaintiffs appeal. Remanded and judgment ordered entered against all defendants.

*Wiley, Streeter, Smith & Ford,* for plaintiffs.

*Howard C. Chilson,* for defendant W. P. Wink.

EDWARD M. SHARPE, J.  The Hall Motor Sales was a Michigan corporation with offices in Ypsilanti and with defendants W. P. and Wm. J. Wink as stockholders. It dealt in Buick cars. In March, 1927, it began to borrow money from plaintiff bank and in July, 1927, the defendants together with J. E. Hall delivered to the bank an instrument guaranteeing notes signed by the Hall Motor Sales.

November 18, 1931, the company amended its articles of incorporation by changing its name to Redford Chevrolet Company and moved its office to Detroit. On December 30, 1931, the company under its old name gave the bank a 30-day promissory note

for $7,400 and on January 30, 1932, the company renewed this note for 30 days and signed the same by using its new name; however, the bank asked for a new guaranty agreement which was given February 16, 1932, and signed by both defendants. The new agreement was similar to the old one and reads as follows:

"Whereas, Redford Chevrolet Company, a corporation organized under the laws of the State of Michigan, whose principal office is at Detroit, Michigan, hereinafter referred to as said corporation, desires to borrow upon its notes from time to time, though it may be not continuously, of the First National Bank of Ypsilanti, having its principal office in the city of Ypsilanti, Michigan, hereinafter referred to as said bank:

"Now, therefore, for a valuable consideration, the receipt whereof is hereby acknowledged and subject to the limitation that the obligation hereunder shall in no event require the undersigned to pay more than the principal sum of $10,000 and interest thereon in addition thereto, the undersigned do guarantee to said bank the prompt payment at maturity, or any accelerated or extended date, of any and all notes of said corporation ("said corporation" wherever used herein shall include any successor, firm or corporation, whether immediate or otherwise), which evidence loans and (or) discounts, present or future, by said bank and any and all renewals or extensions, in whole or in part, of said notes until the same, both principal and interest, are fully paid and satisfied. Presentment, demand, protest and notice of protest or dishonor and diligence in collecting said notes are each and all waived. Any collateral or other security of said corporation, or any other party, which said bank may hold or which may come to it or to its possession may be released or otherwise dealt with by said bank in all respects

and particulars as though this guaranty were not in existence and the obligation of the undersigned hereunder shall be in no wise affected thereby, the undersigned hereby waiving and foregoing any right in respect of any such action of said bank. The possession by said bank of any note of said corporation unless direct written evidence to the contrary be produced, shall be conclusive that it is one of the notes covered hereby, and that full value was given by said bank therefor.

"The obligation of the undersigned hereunder shall be several and also joint each with all or with any one or more of the others and may be enforced against each separately or against any two or more jointly, or against some separately and some jointly. Said obligation shall be continuing and shall continue (irrespective of any statute of limitations otherwise applicable) and cover and include all loans and (or) discounts made before the revocation hereof shall become effective as herein provided, and as to any loans and (or) discounts so made, shall continue thereafter until the same are fully paid and satisfied. The obligation hereunder shall be in addition to any similar obligation or other liability of the undersigned to said bank. A revocation hereof may be made by the undersigned or any of them as herein provided, but not otherwise. Such revocation shall be by writing signed by the party, or, if deceased, by his personal representative, and delivered to the president, vice-president or cashier of said bank in person at said bank, and shall become effective at the opening of business on the day next succeeding the delivery thereof. The bankruptcy or insolvency of or revocation by any of the undersigned shall not affect the obligation of the others of the undersigned hereunder, but such others shall continue liable for future loans and (or) discounts and for extensions and renewals of prior obligations as though such bankrupt or insol-

vent or revoking party had not been a party hereto. The obligation hereof shall survive the death of any or all of the undersigned and shall be binding upon the estate of any such deceased party and upon any surviving party for all loans and (or) discounts made thereafter, the same as though such death had not occurred. The obligation of the undersigned hereunder shall be absolute and primary and shall be complete and binding as to each of the undersigned forthwith upon the signing of the same by such one of the undersigned and subject to no condition whatever precedent or otherwise.

(Sgd.)   "WM. J. WINK,
(Sgd.)   "W. P. WINK.

"The charter of said corporation expires on ......
"Dated Ypsilanti, Michigan, Feb. 16, 1932."

When the note fell due on February 29, 1932, $400 was paid on it and renewed for $7,000 for 60 days, a copy of the renewal note reads as follows:

"No. 7030.         Ypsilanti, Michigan, Feb. 29, 1932.
$7,000
300
_____
$6,700

"Two months after date without grace I promise to pay to the order of the First National Bank, Ypsilanti, Mich., seven thousand dollars, at the First National Bank, Ypsilanti, Mich. Value received with interest at 7 per cent. per annum. Due April 29.

"REDFORD CHEVROLET CO.,
"WM. J. WINK
"Secy.-Treas.

"Address: Six Mile and Grand River Ave., Detroit."

When the renewal note became due, the bank sued upon it as well as the guaranty signed February 16, 1932.

The trial judge held that the guaranty agreement did not apply to renewal notes; but that the defendant Wm. J. Wink was liable because he signed the guaranty on the understanding that it was to apply to renewal notes; and held that W. P. Wink was not liable because there was no evidence as to what his understanding was. Plaintiff appeals.

In *Griffin Manfg. Co.* v. *Mitshkun,* 233 Mich. 640, 642, this court said:

"In construing a contract of guaranty, the intention of the parties should govern. Where the language of the writing is not ambiguous the construction is a question of law for the court, on a consideration of the entire instrument."

And in *Morris & Co.* v. *Lucker,* 158 Mich. 518, we said:

"Contracts of guaranty are to be construed like other contracts, and the intent of the parties, as collected from the whole instrument and the subject-matter to which it applies, is to govern."

The first matter to consider in this case is the question of the guaranty lacking consideration. We think there is sufficient evidence to show consideration. We find that after the bank received the guaranty it renewed the note for 60 days and surrendered the existing note for the new one. See, *Gay* v. *Berkey,* 137 Mich. 658; *Citizens' Commercial & Savings Bank of Flint* v. *Platt,* 135 Mich. 267; *Borden* v. *Fletcher's Estate,* 131 Mich. 220; *Calkins* v. *Chandler,* 36 Mich. 320 (24 Am. Rep. 593).

But, in a large measure the question is, Does the renewal of the note evidence a present loan and present indebtedness, or a past loan and past indebtedness?

The language of the guaranty reads: "the undersigned do guarantee to said bank the prompt payment at maturity, or any accelerated or extended date, of any and all notes of said corporation * * * which evidence loans * * * present or future." The agreement also reads, "The possession by said bank of any note of said corporation unless direct written evidence to the contrary be produced, shall be conclusive that it is one of the notes covered hereby, and that full value was given by said bank therefor," and also, "Said obligation shall be continuing and shall continue * * * and cover and include all loans and (or) discounts made before the revocation hereof shall become effective as herein provided, and as to any loans and (or) discounts so made, shall continue thereafter until the same are fully paid and satisfied." All of the provisions above stated must be considered in giving full construction to the agreement. *McIntosh* v. *Groomes*, 227 Mich. 215; *DeBoer* v. *Geib*, 255 Mich. 542. It seems to us that these provisions evidence an intent to have the agreement cover all notes which the bank might receive, or have in its possession; however, in the recital paragraph of the agreement may be found the following language, "said corporation, desires to borrow upon its notes from time to time."

In our opinion this language does not negative the covering of existing loans. See *Home Savings Bank* v. *Hosie*, 119 Mich. 116; *Brandt* v. *Vanderveen*, 213 Mich. 121.

We also find in the agreement the following language, "The obligation hereunder shall be in addition to any similar obligation or other liability of the undersigned to said bank."

In view of the fact that the defendant company had moved from its present location to Detroit, that

no loan was made at the time of the signing of the agreement, or none made thereafter, and no evidence that any new or added loan was contemplated, [there] is, in our opinion, an indication of the intention of the parties that the agreement was to include the renewal note. In *Hart* v. *Wynne* (Tex. Civ. App.), 40 S. W. 848, the court held that the words "present liabilities" in a guaranty agreement include obligations that are not due.

The trial court found that when Wm. J. Wink executed the note of February 29, 1932, and had negotiated for the guaranty in question, he did so with the full understanding that the guaranty should cover the renewal note. The next question is: May the knowledge and intention of Wm. J. Wink, one of the joint makers of the agreement, be imputed to W. P. Wink the other signer of the agreement?

The record discloses that the instrument was signed by both defendants and delivered by Wm. J. Wink. In *Beman* v. *Wessels,* 53 Mich. 549, this court laid down the rule that it is presumed conclusively that one of two joint makers of a note had authority from the other to deliver it, if he does so.

We think the evidence fairly shows that the new guaranty was intended as additional security for the renewal note.

The cause will be remanded to the trial court with direction to enter a judgment pursuant hereto; with costs against the defendant W. P. Wink.

Potter, C. J., and Nelson Sharpe, North, Fead, Wiest, Butzel, and Bushnell, JJ., concur.