**UNITED STATES of America,
Plaintiff,**

v.

**INTERLAKES MACHINE & TOOL
COMPANY et al., Defendants.**

**Civ. Nos. 3008, 3111.**

United States District Court,
E. D. Michigan, N. D.
April 7, 1975.

On Motion to Amend Judgment
July 24, 1975.

Ralph B. Guy, U. S. Atty., Haskell A. Shelton, Asst. U. S. Atty., Bay City, Mich., for plaintiff.

Hartman, Beier, Howlett, McConnell & Googasian, James L. Howlett, Bloomfield Hills, Mich., for defendants Ben T. Lowell and Louise D. Lowell.

Williston, McGibbon & Kuehn, Alfred E. Williston, Chicago, Ill., for defendants George E. Steinmetz and Jeanine P. Steinmetz.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

This a Motion for Summary Judgment filed by the United States against the individual defendants in the above entitled cause, each one allegedly a guarantor on a Small Business Administration loan made in 1967 to the defendant company.

It is undisputed that a loan in the amount of $180,000 was made by the Presque Isle Bank, Rogers City, Michigan, on November 1, 1967 to Interlakes Machine and Iron Company. Interlakes executed a promissory note on the same day in the amount of $180,000, bearing interest at the rate of 7% per annum, payable in monthly installments of $3,069 beginning December 1, 1967. On November 4, 1967, for good and valuable consideration, the Presque Isle Bank assigned the promissory note and certain guarantee instruments to the Small Business Administration. The promissory note went into default when the maker, defendant company, failed to pay the installment due on October 1, 1968, and failed to pay subsequent installments. Plaintiff has declared the entire indebtedness, including principal, interest and expenses, immediately due and payable. Plaintiff has further made demand upon defendants to pay the entire indebtedness, but they have refused to do so. It is defendants' contention that they should not be bound by their contracts of guaranty because there was no consideration for those contracts and further because of fraud and misrepresentation as to the contract's significance.

## I.

■ Upon the filing of this Motion, only the Templetons and the Lowells responded. They claim that their guaranties were not, as a matter of law, part of the consideration of the loan and therefore are not binding upon them. The Lowells point out that they did not sign a Loan Guaranty Plan until November 6, 1967, subsequent to the disbursement of funds on November 1, 1967. While the Loan Guaranty Plan which the Templetons signed is dated November 1, 1967, Robert I. Templeton claims in an unverified pleading that he actually signed it November 8, 1967. The same unverified pleading states that Nancy C. Templeton signed the guaranty at some time subsequent to November 1, 1967, at her home when it was brought to her by defendant Ben T. Lowell. These defendants point to the general rule that the consideration for a guaranty must be executory; that if the principal contract is already executed, it cannot serve as consideration for the contract of guaranty. Since the Templetons and Lowells claim to have executed their guaranties subsequent to the principal loan agreement they conclude that there is no consideration to support their guaranties.

■ There is, however, an exception to the above stated general rule:

"Although a contract of guaranty is executed subsequently to the principal contract, it is regarded as being made at the same time so as to constitute a part of the same transaction and be supported by the same consideration, and not to require a new consideration, where it is executed pursuant to an understanding had before and is an inducement to the execution of the principal contract; or where it is delivered before any obligation or liability is incurred under the principal contract; or where it is made pursuant to some provision in the principal contract; or where the principal contract does not become operative until the execution of the guaranty; or where the contract of guaranty expressly refers to a previous agreement between the principal debtor and the creditor which is executory in its character and embraces prospective dealings between the parties." 38 C.J. S. Guaranty § 26b, p. 1164.

■ In this case, it is clear that the guaranties of the Lowells and Templetons were executed pursuant to a prior understanding and were an inducement to the execution of the principal contract.

Defendant Lowell's Exhibit D, "Bank Request For Loan Guaranty", dated May 27, 1967, indicates that the loan was predicated upon three guarantors. Those named were Richard I. Templeton, George E. Steinmetz, and Glenn M. Christensen. These individuals were officers of defendant company. Ben T. Lowell was a stockholder of defendant company, but was aware of the Small Business Administration's policy requiring the execution of a guaranty by officers and certain shareholders of a corporation. In fact, Mr. Lowell was the prime mover behind Interlakes' efforts to obtain an SBA loan. See plaintiff's affidavits, filed June 22, 1972. Since Glenn M. Christensen did not sign a guaranty at the time of the disbursement of the loan on November 1, 1967 [1], it was necessary to obtain a third guarantor. The May 31, 1972, affidavit of James M. Miller indicates that SBA was requested to substitute the Lowells on November 2, 1967, by John S. Blasky of the Presque Isle Bank. Permission was granted and the Lowells signed as guarantors. Since it is a requirement of SBA that a loan be secured, and that a guaranty is one method of securing the loan,[2] then where this method is chosen, it is a condition that must be met before

---

1. See Lowell Exhibit G, "Authorization", p. 3, No. 5.

2. 13 CFR § 122.2(c).

the loan will be closed [3]. The contract of guaranty as provided in the authorization is thus an inducement to the principal contract. The guaranties in question here were admittedly signed in order that the specific terms of the authorization be complied with.

■ It appears to this Court that the claim of the Templetons that they signed the Loan Guaranty Plan subsequent to November 1, 1967, is refuted by the plaintiff's affidavits. Nevertheless, it is clear that their execution of the guaranty on a later date was in accordance with the May 27, 1967, agreement, and thus on either of several bases, the Templetons became guarantors, the consideration being the November 1, 1967 loan. If the Templetons actually signed the Loan Guaranty Plan on November 1, 1967, contemporaneously to the principal contract, they are without benefit of any claim of failure of consideration:

> "Where the contract of guaranty is made before or at the same time as the principal contract, and both contracts form parts of the same transaction, one consideration is sufficient for both the principal and the collateral contract and there need not be any other consideration than that moving between the guarantee and the principal obligor under the principal contract; and in some jurisdictions this rule is prescribed by statute. In accordance with this rule, where a guarantee of payment of a note is made before or at the time of the execution of the note, the consideration for the note is the consideration for the guaranty, and no further consideration is necessary." 38 C.J.S. Guaranty § 26b, pp. 1163–1164.

Even if credence is given to the claim that the Guaranty Plan was signed subsequently, it is certain that it was signed as an inducement to obtaining the loan.

The Lowells, on the other hand, indisputedly signed subsequent to the principal contract as guarantors. But they admit in their Memorandum In Opposition To Motion For Summary Judgment that "the SBA would require their guaranties in their file for policy compliance reasons, and arrangements were later made for the Lowells to execute and deposit a purported guaranty several days after the loan was made. Testimony will show that the Lowells complied with this request . . ." (p. 3). This statement substantially verifies the Miller Affidavit of May 31, 1972. Furthermore, the contention that Ben T. Lowell was unknown to Bank and SBA officials is soundly refuted by plaintiff's affidavits and the deposition evidence of Richard I. Templeton. In short, the loan was made by Bank officials on the erroneous belief that only two guarantors were necessary. To rectify the situation, the Lowells agreed to sign as guarantors. They did so with full knowledge of the loan details and themselves were known to the loan officials. As to the Lowells, also, the loan served as consideration for their guaranty.

## II.

■ Both the Templetons and the Lowells argue that they were advised by the closing officials that the guaranties they signed were "bureaucratic technical requirements of no legal substance," and further, that if the loan was defaulted upon, they would be under no obligation to make good on their guaranties. It is difficult to believe that either bank or SBA employees would make such statements; it is even more unlikely that defendants, men of much business experience, would believe such statements themselves. Nevertheless, defendants were obligated to ascertain whether the officials who allegedly assured them that their guaranties were *pro forma* were acting within the scope of their authority in so doing. *Brubaker v. United States*, 342 F.2d 655 (CA7 1965). This would be the prudent course

3. 13 CFR § 122.19.

for any person about to personally guarantee a $180,000 loan. However, whether or not defendants' conduct was prudent, it is certain that the United States is "neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *United States v. City and County of San Francisco,* 310 U.S. 16, 32, 60 S.Ct. 749, 757, 84 L.Ed. 1050 (1940). Defendants do not contend that any agent or employee of the United States, the Small Business Administration, or any other governmental agency with whom they dealt had the authority to waive the requirement of the SBA that three guarantors stand behind the loan in question here.

It is, in fact, an express requirement, established by Congress, that all SBA loans "shall be of such sound value, or so secured as reasonably to assure repayment. Security may include . . . guarantees . . ." 13 CFR § 122.-2(c). If SBA approves a loan application, it issues a formal loan authorization which "states the conditions which the borrower must meet before financial assistance will be extended." 13 CFR § 122.19. The authorization in this case (Defendants' Exhibit F) expressly conditions the loan upon the guaranties of three parties (and their wives). One of these parties failed to sign at the closing of the loan on November 1, 1967. The express provision of the loan authorization could not be waived by the bank officer, and it was necessary that the Lowells secure permission from SBA to sign as guarantors, as has been previously discussed. But just as the number of guarantors could not be waived or modified, the function of the guaranties as security for repayment could not be waived or modified. The defendants are thus bound by their contracts of guaranty.

Therefore, for the reasons stated above, the plaintiff's Motion For Summary Judgment will be granted.

## ON MOTION TO AMEND JUDGMENT

Defendants Ben T. Lowell and Louise D. Lowell, his wife, seek to alter or amend the judgment entered by the clerk in the above action on April 24, 1975. The request is presented in the form of a supplemental memorandum in support of a motion to alter or amend judgment. That motion, filed May 2, 1975 was considered by this court and construed to be in the nature of a motion for reconsideration pursuant to Local Rule IX–A. As it was found to raise no new issues, it. was denied. The defendants filed the present supplemental memorandum on May 8, 1975. If it is construed to be in itself a motion to alter or amend judgment as provided for by Rule 59(e), F.R.Civ.P., it is not timely filed and must be denied. However, in analyzing the relief requested, it appears that the matter should be treated as a motion to correct a mistake in a judgment pursuant to Rule 60(a) F.R. Civ.P. This is because the relief requested, if granted, would not alter the effect of the judgment, but would, rather, place in it what is required by law. There is no time limit in considering a motion under Rule 60(a).

The sole question raised by defendants is whether the judgment erroneously omitted a recital of facts as required by 1917 P.A. 158 (M.C.L.A. 557.51 et seq.), § 4 (M.C.L.A. 557.54). This Michigan statute, in general, eliminates the common law disability of married women to make and enter into contracts which make themselves jointly liable with their husbands upon certain written instruments. Thus realty held as tenants by the entirety is liable to seizure and sale on execution where the husband and wife jointly sign a note upon which there has been recovered a joint judgment. Section 4 of the statute requires any such judgment, to be enforceable as against realty owned as tenants by the entirety or personalty owned by the husband and wife jointly with rights of survivorship, to recite that the persons

against whom it was rendered were husband and wife. This authorizes the enforcement of such judgment as against all property subject to the satisfaction thereof by virtue of the statute.

There is no question but that this judgment is of the type which, under Michigan law, can only be satisfied out of property held by defendants as tenants by the entirety or as joint tenants with rights of survivorship. To this extent, Michigan retains a vestige of common law coverture which would protect Mrs. Lowell's separately-owned property from execution. It is claimed by defendants that the failure of the judgment to state their marital status exposes Mrs. Lowell's sole and separate property to execution on this judgment.

It is clear that the real question herein is whether the United States is bound by the property laws of the State of Michigan in its efforts to enforce its judgment. Generally, "in cases arising under federal statutes, remedies are governed by the directive of the statutes or, if no directive, then by rules fashioned by the federal courts . . . In cases affecting government money and the credit of the government, the authorities set up the principle that federal law should apply." *United States v. Helz*, 314 F.2d 301 (CA 6, 1963). But, where an individualized, negotiated contract is the basis of the relationship between the individual and the United States, the government may not obtain a preferred right not provided for by statute or specific agency regulation which was not a part of the bargain, "and which requires overriding a state law dealing with the intensely local interests of family property and the protection (whether or not it is up-to-date or even welcome) of married women." *United States v. Yazell*, 328 U.S. 341, 349, 86 S.Ct. 500, 505, 15 L.Ed.2d 404 (1966).

The government urges the Court to adopt the decisions in *United States v. Helz, supra,* and *United States v. Carson*, 372 F.2d 429 (CA 6, 1967) to the facts in this case. Neither case involves itself with SBA loans. *Helz,* decided prior to *Yazell,* dealt with a loan application made on Federal Housing Administration forms through a bank which subsequently assigned the defaulted notes to the FHA in return for payment. It was held that the wife (and co-signer) was not entitled to the protection of the Michigan coverture law. *Carson,* decided after *Yazell,* has little applicability to the present case, involving as it does the Bankhead-Jones Farm Tenant Act (7 U.S.C. § 1941 et seq.) and a judgment against a livestock dealer who was not a party to the loan between a cattle farmer and the United States. *Yazell,* on the other hand, is an SBA case. The SBA deals directly with individuals who seek loans from it. This was of great significance in reaching the decision that Mrs. Yazell was entitled to the protection of the Texas coverture laws. In fact, it was on this basis that the Supreme Court distinguished the holding of this Circuit in *Helz.* See Note 15, 382 U.S. 341, 348, 86 S.Ct. 500, 15 L.Ed.2d 404.

In this case, summary judgment was granted the government in large measure because of the personal involvement of the Lowells regarding the loan made to defendant Interlakes. The Court recognized Ben T. Lowell as the prime mover behind Interlakes' efforts to obtain the loan. Further, it should be recalled that the loan was in danger of falling through unless a third guarantor could be acquired. The only party apparently acceptable to the SBA was Mr. and Mrs. Lowell, who were well known to SBA officials. The United States and the defendants are party to an individualized negotiated contract. The parties from whom the government sought satisfaction in *Helz* and *Carson* did not have such a relationship.

The government argues that Mrs. Lowell is "hard pressed" to assert that she relied on Michigan coverture law, since the *Helz* decision was in effect when she signed the guaranty. But the *Yazell* decision was in effect then also. To this Court's mind, *Yazell* put the

SBA on notice that the personally negotiated contracts that it became a party to in Michigan could not override a married woman's right to coverture without making it a part of the bargain. Nothing in *Helz* took away Mrs. Lowell's rights under Michigan law in this type of case. *Yazell* pointed out that only Michigan, of all states, still has some form of coverture. The SBA was clearly on notice that Michigan's coverture law had to be dealt with in its contracts.

It is therefore the opinion of this Court that the relief requested by defendants is meritorious and will be granted. It further appears that the remaining defendants, the Templetons and the Steinmetzs are entitled to similar relief. The Clerk is therefore ordered to correct the judgment accordingly, stating which of the defendants were husband and wife at the time of their signing as guarantors.