**AMERICORP FINANCIAL, INC.,**
Plaintiff–Appellee,

v.

**James V. ZELCH, M.D., Defendant–**
Appellant.

No. 01–1533.

United States Court of Appeals,
Sixth Circuit.

Feb. 3, 2003.

Before MARTIN, Chief Circuit Judge; DAUGHTREY, Circuit Judge; and O'MALLEY, District Judge.*

PER CURIAM.

Dr. James Zelch appeals the district court's grant of summary judgment to Americorp Financial enforcing personal guaranties signed by Zelch. Americorp Financial, a Michigan corporation, is in the business of providing "finance leases" for funding the acquisition of medical equipment. Americorp filed an action in district court to enforce three personal guaranties signed by Zelch. These guaranties were used to secure finance leases from Ameri-

---

* The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

corp in order to provide equipment for two start-up medical imaging companies in which Zelch had an interest.

Zelch, a medical doctor who is board certified in radiology, has owned or had an interest in over twenty magnetic imaging companies organized and operated in ten different states. In May of 1996 Zelch signed a Master Lease Guaranty personally guaranteeing the debt of Tri–Imaging, Inc., a new start-up, in the event it defaulted. Zelch signed this Master Lease Guaranty, drafted on Americorp letterhead, to enable a business promoter, Randy Montrose, to engage in lease negotiations on behalf of Tri–Imaging. Although Zelch signed this guaranty, Zelch states that he told Montrose not to deliver the guaranty until all of the business details for starting the operation of the imagining center had been completed. Zelch did not, however, convey this limitation on Montrose's authority to anyone other than Montrose himself. Apparently ignoring Zelch's instructions, Montrose delivered the signed guaranty and secured lease financing with Americorp for the equipment to be used by Tri–Imaging, Inc.

On receiving a request from Americorp in August of 1996 to execute another guaranty in order to secure a lease supplement, Zelch signed a second guaranty and sent it to Montrose with a cover letter stating he thought he was a twenty-five percent owner of Tri–Imaging, Inc., and that his signature was conditioned on the accuracy of this assumption. Although this Master Lease Guaranty was also on Americorp letterhead, Zelch never notified Americorp of any limitation on or condition attached to his guaranty.

Finally, several months later a third guaranty on Americorp letterhead and signed by Zelch was executed to secure lease financing for a second start-up, Medical Imaging Systems of Binghamton. Though Medical Imaging Systems of Binghamton never formally came into existence, a lease between Americorp and Medical Imaging Systems was executed in January of 1997. This time another promoter, Anthony Defoe, negotiated with Americorp. Zelch denies having any recollection of guaranteeing this specific lease. He does admit, however, that he may have signed a Master Lease Guaranty at the request of his business partners that could have been used for this purpose. Zelch was also aware in 1995 that Anthony Defoe, and perhaps others, were interested in developing an imaging center in either Ithaca, Huntington, or Binghamton, New York.

Both Tri–Imaging and Medical Imaging defaulted on their lease obligations. Americorp did not act to enforce the personal guaranties until a year and a half later when it filed this action. The amount of indebtedness at issue is approximately two million dollars.

This court reviews the district court's grant of summary judgment de novo. *Monette v. Electronic Date Sys.*, 90 F.3d 1173, 1176 (6th Cir.1996). "Summary judgment is appropriate where there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a mater of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is proper, we view the facts and any reasonable inferences drawn from those facts in a light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Because this is a diversity action, Michigan law governs the interpretation of the three guaranties. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Michigan law, a "contract of guaranty" is interpreted according to the rules of contract. *First*

*Nat'l Bank of Ypsilanti v. Redford Chevrolet Co.*, 270 Mich. 116, 258 N.W. 221, 223 (1935). On examining all three Master Lease Guaranties, we find no ambiguity. They are straightforward, clear, concise and complete on their face. There are no allegations that Americorp either participated in or was aware of any fraudulent activity on behalf of any of the beneficiaries of the lease agreements. Zelch signed all three guaranties indicating assent, and Americorp provided consideration. Thus, the contracts were duly executed; therefore they are enforceable. *See Director of Bureau of Workers' Disability Comp. v. Durant Enters., Inc.*, 195 Mich.App. 626, 491 N.W.2d 584 (1992) (holding when a guaranty is properly executed, a guarantor is liable for his guaranty); *see also Amtower v. William C. Roney Co.*, 232 Mich. App. 226, 590 N.W.2d 580, 583–84 (1999) (holding that "where the language of a contract is clear and unambiguous," the contract is executed according to its plain sense and meaning).

■ These Master Lease Guaranties signed by Zelch did not have any express language noting the oral conditions that Zelch allegedly placed on Montrose and/or Defoe. This is true, moreover, despite the fact that Zelch was aware that all of the guaranties were on Americorp letterhead and on at least one occasion, Zelch received the guaranty from Americorp directly and returned the executed guaranty directly to Americorp. Furthermore, Americorp asserts that it is unaware of any new conditions arguably modifying the signed written agreement, and Zelch offers nothing to rebut that assertion. It is a basic principle that if delivery of the agreement is conditional, the lender is bound by those conditions only if the lender knows about them. *See Wilson Leasing Co. v. Seaway Pharmacal Corp.*, 53 Mich.App. 359, 220 N.W.2d 83, 85 (1974) (holding if a guaranty is unilaterally amended without notifying the other parties, the original guaranty still controls).

■ These purported oral conditions of which Americorp was unaware in no way challenge the fact that there was mutual assent to the signed written guaranty. Rather, a meeting of the minds is necessary to modify a binding contract. *See Port Huron Educ. Ass'n MEA/NEA v. Port Huron Area School Dist.*, 452 Mich. 309, 550 N.W.2d 228, 238 (1996). Here, there was no meeting of the minds between Americorp and Zelch concerning the oral conditions Zelch placed on Montrose.

Zelch offers several arguments in his defense. First, Zelch argues that, according to the rules of agency, Montrose and/or Defoe had no authority to bind Zelch. This argument is misplaced. A question of agency would come into the analysis if Zelch were challenging the specifics of Montrose's negotiations with Americorp, or if Zelch had somehow authorized Montrose to sign the personal guaranty on his behalf. However, Americorp's action does not concern the substance of what Montrose negotiated on Zelch's behalf. Rather, Americorp's action involves the enforcement of contracts of guaranty knowingly signed by Zelch. Certainly, Zelch may have a valid claim against Montrose and Defoe; however, these disputes do not concern what is at issue in Americorp's enforcement action.

■ Zelch also argues that Americorp's failure to conduct due diligence before entering the lease transactions and after the default released Zelch from the guaranties. There is no authority under Michigan law for this novel proposition. Furthermore, on reviewing the record, it is clear that Americorp did examine the commercial reasonableness of these leasing transactions before it executed them. As for the post-default due diligence argument, the

language of the guaranty states "each of the undersigned waives notice of acceptance hereof and of presentment, demand, protest, and notice of nonpayment or protests as to any note or obligation signed, accepted, endorsed or assigned to you by said lessee." This language indicates that Americorp had no duty to conduct post-default due diligence or to notify Zelch of any lack of performance under the lease.

Finally, Zelch argues that the district court lacked subject matter jurisdiction because there was not complete diversity among the defendants—defendant Defoe is domiciled in the State of Michigan. Americorp voluntarily dismissed Defoe when Defoe filed for Chapter Seven bankruptcy proceedings. Consequently, this issue is moot and the alleged diversity defect has been cured by Americorp's actions. Even so, a diversity defect may be cured by dismissing a dispensable party, and both district and appellate courts have the authority to do this. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832–836, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). Defendant Defoe did not sign the personal guaranties which Americorp is seeking to enforce. Under Rule 19 of Federal Rule of Civil Procedure, Defoe is a dispensable party and thus would be appropriately dismissed from the action.

The judgment is affirmed.