*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SURESH STAMPWALA,
DHARMISTA STAMPWALA, and
SHOBHA STAMPWALA,

Plaintiffs-Appellants,

v

MARK KARABAJAKIAN, D.O., NORMAN
MARKOWITZ, M.D., and
LAWRENCE DELL, M.D.,

Defendants-Appellees,

and

STAMP CLINICAL LABORATORY, INC., doing
business as PREMIERE DIAGNOSTICS
LABORATORY, RAJ & ASSOCIATES, M.D., PC,
and PRAKASH GANDHI,

Defendants.

UNPUBLISHED
November 17, 2022

No. 358634
Oakland Circuit Court
LC No. 2018-169812-CB

Before: MURRAY, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting defendants Mark Karabajakian, D.O., Norman Markowitz, M.D., and Lawrence Dell, M.D.'s motion for summary disposition pursuant to MCR 2.116(C)(10) and dismissing plaintiffs' breach of contract claim.[1] Plaintiffs also

---

[1] Stamp Clinical Laboratory Inc., Premiere Diagnostics Laboratory, Raj & Associates, M.D., P.C., and Prakash Gandhi are not parties to this appeal. On December 14, 2018, the parties entered a stipulated order to dismiss Prakash Gandhi. On September 26, 2021, the trial court entered the stipulated order dismissing plaintiffs' claims against Stamp Clinical Laboratory, Inc. On

appeal the trial court's order denying their motion to extend the case evaluation deadline and the trial court's order awarding case evaluation sanctions in favor of defendants. We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises from personal guarantee agreements between defendants and plaintiffs, where defendants guaranteed the contractual obligations of Raj & Associates, M.D., P.C., following its purchase of plaintiffs' laboratory, Stamp Clinical Laboratory (SCL). As discussed below, the background to these guarantees entailed several earlier transactions.

## A. STAGE INVESTMENT PARTNERS

On April 18, 2017, Prakash and Milan Gandhi (collectively referred to as "the Gandhis") conferred with defendants about entering into a proposed business venture to purchase SCL and merge the laboratory and defendants' separate medical practices into a multi-specialty group called NextGen Physicians (NextGen). To effectuate the sale, the Gandhis recommended that defendants each invest some dollar amount into a limited liability company that would then loan funds to another entity, Raj & Associates, M.D., P.C. Raj would then use those funds to purchase the stock of SCL. In consideration for doing so, defendants would collect interest on their loan amount, and if defendants ultimately joined NextGen, and referred their business to SCL, then defendants would also collect any profits. On April 20, 2017, Prakash executed the operating agreement for Stage Investment Partners, LLC (Stage). Defendants agreed to join and invest in Stage and issued checks to the Gandhis for their respective investments; defendants Dell and Karbajakian each contributed $110,000 (25%), and defendant Markowitz contributed $27,500 (6.25%). The next day, Stage, as "lender," entered into a loan agreement with Raj & Associates, as "borrower," where Stage agreed to loan to Raj & Associates up to the purchase price of all the issued and outstanding shares of the common stock of SCL. The loan agreement was signed by Ramegowda Rajagopal, M.D., on behalf of Raj & Associates and by Prakash on behalf of Stage, effective April 21, 2017. Defendants subsequently signed a membership interest subscription and joinder agreement, indicating their corresponding membership interests. The record shows that the Gandhis controlled all transactions related to SCL's acquisition from that point forward.

## B. PURCHASE OF SCL BY RAJ & ASSOCIATES

Following negotiations with the Gandhis, plaintiffs agreed to sell their shares in SCL to Raj & Associates for $850,000 pursuant to a stock purchase agreement, requiring that half of the purchase price be paid immediately, and the other half be paid in three equal and annual installments. The stock purchase agreement was signed by Prakash, as administrator on behalf of Raj & Associates, and by plaintiffs on behalf of SCL, effective May 1, 2017. The installment payments were attached as promissory notes to the stock purchase agreement and signed by Prakash on behalf of Raj & Associates. Plaintiff Shobha testified that after plaintiffs' demand that the installment payments be guaranteed as a precondition of sale, Prakash determined that he and defendants would be the guarantors for the transaction. The promissory notes provided that in the event of a default, plaintiffs would have the right to declare the outstanding principal immediately

---

September 1, 2021, the trial court granted plaintiffs' motion for entry of default judgment against Raj & Associates, M.D., P.C., in the amount of $465,566.58.

due. Plaintiffs also conditioned the sale on a management services agreement, which provided that plaintiffs would continue to manage SCL through their management company, Vision Technology USA (Vision), but that Vision could terminate and demand the full remaining balance of the stock sale if the new owners failed to generate $1 million in new business within the agreements first year.

## C. PERSONAL GUARANTEES

The record shows that on the morning that SCL's stock sale transaction was closed, on April 28, 2017, Milan and plaintiffs received from their counsel, Keith Soltis, the final execution copies of the stock purchase agreement, management services agreement, four personal guaranty agreements listing Prakash and defendants as guarantors, and other related documents. Defendants were not included in this email. On that same day, plaintiffs went to the Gandhis' office to close the stock sale transaction, and the stock purchase agreement was executed by plaintiffs and Prakash, as administrator for Raj & Associates. Defendants were not present at the closing. The Gandhis provided plaintiffs with only one personal guaranty, signed by Prakash, at the time of closing. However, Shobha testified that Prakash gave verbal assurances that Milan possessed the remaining guarantees signed by defendants, but that Milan would deliver them to plaintiffs at a later time.

The record reveals that aside from defendants' initial contribution to Stage, they had little to no involvement in the negotiations for SCL's stock sale. Defendants consistently testified that they were not privy to or even made aware of the documents related to the transaction, including the loan agreement between Stage and Raj & Associates, the stock purchase agreement and its conditions to the sale, and the management services agreement. Plaintiffs also concede that the price and terms of the sale were negotiated strictly by the Gandhis, not defendants, with plaintiff Shobha testifying that defendants were "ghosts" to plaintiffs.

Raj & Associates failed to make the first installment payment under the promissory note, and SCL failed to generate $1 million in new business within the first year of the agreement. As a result, on April 19, 2018, plaintiffs elected to terminate its management services and sent written notice of termination to the Gandhis, demanding the remaining balance of the purchase price, $425,000, pursuant to the management services agreement.

## D. CASE EVALUATION

On November 18, 2018, plaintiffs filed their complaint, alleging breach of contract, promissory estoppel, and requesting declaratory relief. On August 29, 2019, the trial court granted the parties' joint motion to amend the scheduling order and ordered case evaluation to occur in late October of 2019, but shortened the response period to accept or reject the case evaluation award to seven.

On October 11, 2019, plaintiffs filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that defendants breached their personal guarantees. Defendants filed their motion for summary disposition two weeks later, arguing that plaintiffs failed to state a claim upon which relief could be granted for declaratory relief pursuant to MCR 2.116(C)(8), and that no genuine issue of material fact existed as to plaintiffs' breach of contract and promissory estoppel claims under MCR 2.116(C)(10). Case evaluation occurred that same day, October 23, 2019, making the response deadline October 30,

2019, pursuant to the amended scheduling order. However, plaintiffs did not submit their response to the case evaluation award until November 15, 2019, and defendants did not respond at all. Accordingly, the trial court found that both parties rejected the case evaluation award.

Plaintiffs subsequently filed their motion to extend the case evaluation deadline, arguing that due to internal docketing errors, plaintiffs mistakenly believed that the response period was 28 days after case evaluation. The trial court denied plaintiffs' motion for lack of merit on the grounds presented.

The trial court subsequently granted defendants' motion for summary disposition, finding that plaintiffs failed to state a claim for declaratory relief because plaintiffs' alleged injuries had already occurred and, therefore, no "actual controversy," a condition precedent to invoking declaratory relief, existed. The trial court further determined that summary disposition was appropriate as to plaintiffs' breach of contract claim because there was no evidence of consideration between the parties, nor mutuality of agreement or meeting of the minds on all essential terms of the personal guarantees. The court also dismissed plaintiffs' promissory estoppel claims due to the absence of any evidence of a promise made by defendants to plaintiffs. And finally, with respect to plaintiffs' motion for summary disposition, the trial court granted summary disposition in favor of defendants, pursuant to MCR 2.116(I)(2),[2] for the same reasons.

The court later awarded case evaluation sanctions in favor of defendants, including reasonable attorney fees amounting to $11,000. On appeal, plaintiffs only challenge the trial court's dismissal of their breach of contract claim, and also raise procedural challenges to the case evaluation award.

## II. BREACH OF CONTRACT

Plaintiffs argue that the trial court erred by granting summary disposition in favor of defendants because the personal guarantees signed by each defendant were unambiguous, enforceable contracts.

We review de novo a trial court's decision on a motion for summary disposition. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim, and in reviewing such a motion, this Court must consider the evidence in the light most favorable to the nonmoving party. *Id*. at 582-583. Likewise, we review de novo issues related to contract interpretation. *American Home Assurance Co v Mich Catastrophic Claims Ass'n*, 288 Mich App 706, 717; 795 NW2d 172 (2010).

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "Contracts of guaranty are to be construed like other contracts, and the intent of the parties as collected from the whole instrument and the subject-matter to which it applies is

---

[2] MCR 2.116(I)(2) provides that "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

to govern." *In re Landwehr's Estate*, 286 Mich 698, 702; 282 NW 873 (1938), quoting *Morris & Co v Lucker*, 158 Mich 518, 520; 123 NW 21 (1909). A guaranty contract "is a special kind of contract[,]" where a guarantor promises "to answer for the debt or default of another" and whose "liability depends on an independent collateral agreement by which he or she undertakes to pay the obligation if the primary payor fails to do so." *Bandit Indus, Inc v Hobbs Int'l, Inc* (*After Remand*), 463 Mich 504, 507 n 4, 511–512; 620 NW2d 531 (2001), citing 23 Michigan Civil Jurisprudence, Surety, § 14, p 50. Although the general rule is that separate agreements are treated separately, "when parties enter into multiple agreements relating to the same subject-matter, we must read those agreements together to determine the parties' intentions." *Wyandotte Electric Supply Co v Electrical Technology Sys, Inc*, 499 Mich 127, 148; 881 NW2d 95 (2016).

## A. MUTUAL ASSENT

The trial court held that the underlying personal guarantees lacked mutuality of agreement or meeting of the minds on all essential terms. To form a binding contract, there must be mutual assent or a meeting of the minds on all essential terms. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kloian*, 273 Mich App at 454 (quotation marks and citations omitted). A personal guarantee cannot be imposed without the guarantor's unambiguous expression and intention to accept that responsibility. *Bandit*, 463 Mich at 514. However, a lack of certain nonessential terms is not fatal to a contract. *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 369; 320 NW2d 836 (1982). Further, "judicial avoidance of contractual obligations because of indefiniteness is not favored under Michigan law, and so when the promises and performances of each party are set forth with reasonable certainty, the contract will not fail for indefiniteness." *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 14; 824 NW2d 202 (2012).

The trial court found that the personal guarantees failed to include any reference to the alleged indebtedness in the contract. Each of the personal guarantee agreements provided:

> This Personal Guaranty Agreement (the "Guaranty") is made this ___ day of _____, 2017, by the undersigned, [] ("Guarantor"), for value received. Undersigned unconditionally and absolutely guarantees to each of Suresh Stampwala, Dharmista Stampawala and Shobha Stampwala (collectively "Sellers") payment when due of the indebtedness of Raj & Associates, M.D., P.C., a Michigan professional services corporation (the "Purchaser") pursuant to Promissory Notes between each of the Sellers and Purchaser dated _____, 2017 (the "Notes").

The personal guarantees of defendants Dell and Karabajakian were both dated April 1, 2017, in terms of the execution date, while defendant Markowitz's personal guaranty did not provide an execution date. However, it is undisputed that the agreements were not signed by April 1, 2017, considering that defendants did not agree to join Stage until late April. All three of defendants' personal guarantees failed to include the date of the promissory notes referenced in the agreements.

Plaintiffs argue that the trial court erred by overlooking the express language contained in the first clause of the personal guarantees, which provided that each guarantor "absolutely and unconditionally, guarantees to the Sellers the full and prompt payment and performance when due, whether at maturity or earlier by reason of acceleration or otherwise," a designated percentage "of

the Purchaser's obligations under the Notes up to" a set amount.[3]  In other words, the guarantees, as written, explicitly identified the maximum amount potentially owed by the guarantors.  Plaintiffs further argue that although the specific date of the referenced promissory notes was missing from the personal guarantees, failure to include a nonessential term was not fatal to the contract.  *Opdyke*, 413 Mich at 369.

The personal guarantee agreements, by their own terms, indicated that there was mutual assent.  On its face, the guarantees explicitly identified the parties and the extent of their obligations under the agreement, stating that defendants as guarantors "unconditionally and absolutely guarantees" payment to plaintiffs, as sellers, "when due of the indebtedness of Raj & Associates," the purchaser, "pursuant to Promissory Notes between each of the Sellers and Purchaser."  Based on this language, it was clear that defendants agreed to be liable for any indebtedness that Raj & Associates owed to plaintiffs.  While the personal guarantees conditioned the amount potentially owed by the guarantors to the purchaser's obligations under the promissory notes, the guarantees themselves still specified the designated percentage and maximum amount guaranteed by each defendant.

Notably, even if the promissory notes were attached to the guarantees, the exact amount of indebtedness would have varied based on when the default occurred.  Raj & Associates paid half of the purchase price at the time of closing, and the other half was set to be paid in three equal and annual installments.  Assuming Raj & Associates paid the first installment but defaulted before the next installment came due, the amount of indebtedness guaranteed would have lessened, and defendants would have only been liable for a percentage of the remaining indebtedness but never more than the set amount identified in each of the guarantee agreements.  The plain language of the guarantees, standing alone, included the material terms necessary to put defendants on notice of their obligations under the agreement and contained an unambiguous expression of the defendants' intentions to accept that responsibility.  *Bandit*, 463 Mich at 514.

Additional facts establish that mutual assent existed.  While it may be true that defendants had practically no involvement in any of the negotiations concerning the sale, it is also undisputed that each defendant signed the personal guarantees.  Prakash and Milan both testified that defendants were given copies of the personal guarantee agreements and other related documents for review before signing.  Milan further testified that defendants Dell and Markowitz both acknowledged the personal guarantees but only briefly reviewed the documents, at best, before signing them.  The mere failure to read a contract is not enough to avoid a contract.  *Vandendries v Gen Motors Corp*, 130 Mich App 195, 200; 343 NW2d 4 (1983).  See also *Liebelt v Liebelt*, 118 Idaho 845, 848-849; 801 P2d 52 (App, 1990) ("As a corollary, a written contract cannot be avoided by one of the parties to it on the ground that he signed it without reading it and did not understand it; failing to read the contract or to have it read to him or to otherwise inform himself as to the nature, terms and conditions of the contract constitutes nothing more than gross negligence on the part of that party and is an insufficient ground upon which to set the contract aside.").  Accordingly, the language of the personal guarantees indicated that there was a meeting of the minds between

---

[3] The designated percentage and fixed amount varied between defendants' personal guarantees.  According to the personal guaranty agreements, defendant Markowitz guaranteed 6.25% of the purchaser's obligations, up to $27,500, while defendants Dell and Karabajakian each guaranteed 25% of the purchaser's obligations, up to a total of $110,000 each.

the parties and that the promises and performances of each party were set forth with reasonable certainty. *Calhoun*, 297 Mich App at 14.

## B. CONSIDERATION

Plaintiffs argue that defendants received consideration for signing the guarantees in the form of SCL's expected future revenue and the expectation of NextGen's creation and its attendant benefits.

Contracts of guaranty must be construed like other contracts and, therefore, must be supported by consideration. *First Nat'l Bank v Redford Chevrolet Co*, 270 Mich 116, 121; 258 NW 221 (1935). "The essence of consideration—whatever form it takes—is that there be a bargained-for exchange between the parties." *Calhoun*, 297 Mich App at 13-14. However, past consideration does not constitute legal consideration for a subsequent agreement. *Shirey v Camden*, 314 Mich 128, 138; 22 NW2d 98 (1946).

The record shows that the parties entered into multiple agreements related to the same subject matter, the sale of SCL. Therefore, those agreements should be considered together. See *Wyandotte Electric Supply Co*, 499 Mich at 148. Prior to the sale of SCL, defendants entered into an agreement to invest money into Stage with the understanding that Stage would loan that money to Raj & Associates and Raj & Associates would purchase SCL. In exchange for defendants' investments in Stage, defendants received the expectation of future profits from SCL and SCL's potential merger into NextGen. Plaintiffs sold SCL to Raj & Associates pursuant to the stock purchase agreement. At some point after SCL's closing, defendants signed the personal guarantee agreements. However, the membership interest subscription and joinder agreements defendants signed to effectuate their investment in Stage contained no expression of any intention for that agreement to govern the subsequent transactions related to SCL, and nor did they contain any mention of a personal guarantee. Stage's operating agreement (which defendants did not sign) also made no mention of its intended loan to Raj & Associates or any personal guarantees, nor did it include information regarding Raj & Associates' acquisition of SCL. Therefore, the personal guarantees and defendants' agreement to join and invest in Stage were separate and distinct contracts requiring independent consideration.

We cannot accept plaintiffs' argument that defendants received legal consideration in the form of SCL's expected future revenue and SCL's potential merger in NextGen, as defendants bargained for the same when they invested in Stage in the months preceding the guarantees. The consideration exchanged in defendants' prior agreement to invest in Stage cannot form the basis of the guarantee contracts; additional consideration for the subsequent guarantees was required. *Shirey*, 314 Mich at 138 (concluding that past consideration does not constitute legal consideration for a subsequent agreement). Moreover, the guarantees themselves failed to identify any obligation undertaken by plaintiff in exchange for defendants' guarantees. Just as plaintiffs did not incur any detriment, defendants received no additional benefit by entering into the personal guarantees. *Dep't of Natural Resources v Bd of Trustees of Westminster Church of Detroit*, 114 Mich App 99, 104; 318 NW2d 830 (1982) ("Consideration for an agreement exists where there is a benefit on one side or a detriment suffered, or services done, on the other.").

Relying on *RL Polk Printing Co v Smedley*, 155 Mich 249, 251; 118 NW 984 (1908), the trial court also found that the underlying personal guarantees lacked consideration because the guarantees solely secured a pre-existing debt. We agree with the trial court that the personal

-7-

guarantees also fail for want of consideration because the personal guarantees were signed sometime after SCL's sale occurred and were executed solely to secure Raj & Associates' pre-existing indebtedness.

On April 28, 2017, Prakash and plaintiffs signed the stock purchase agreement, promissory notes, and other related documents, indicating an effective date of May 1, 2017. At the closing, the Gandhis provided plaintiffs with only one personal guaranty, signed by Prakash, but promised plaintiffs that they were in possession of defendants' executed guarantees that would be delivered at a later time. However, it was not until earlier that day that Soltis sent the final execution copies of the four personal guarantees and other related documentation to Milan and plaintiffs. The record contains no evidence of any contact with defendants on the date of closing from any of the parties, as defendants were not present at the closing, nor were they included in Soltis' email sent earlier that day. Moreover, while the personal guarantees of defendants Dell and Karabajakian were dated April 1, 2017, Milan admitted that the date was incorrect and that the guarantees were signed sometime in May of 2017 or later. Although defendant Markowitz's guarantee was undated, Milan testified that Markowitz was the last of defendants to sign. While the exact date that defendants signed the personal guarantees remains unclear, it is undisputed that the execution of the guarantees occurred after SCL's stock sale closing date.

Plaintiffs argue that even if guaranty contracts require new consideration when they are executed after the principal agreement, an exception to this rule exists and requires no new consideration in support of a guarantee "where it is executed pursuant to an understanding had before and is an inducement to the execution of the principal contract." *United States v Interlakes Mach & Tool Co*, 400 F Supp 59, 61 (ED Mich, 1975), citing 38 CJS, Guaranty § 26b, p 1164. While this may be true, the exception necessitates that defendants execute the guarantees with an *understanding they had before* the guarantees were required as part of the overall deal, which is clearly not the case here. The record includes copious evidence of defendants' phantom involvement in the sale of SCL, including plaintiff Shobha's testimony that defendants were "ghosts" to her. Defendants did not engage in any negotiations of the price and terms of the sale with plaintiffs, and each testified that they were not made aware that personal guarantees were a precondition to the sale. More importantly, none of the documents establishing the purchase of SCL contain a request for personal guarantees. And while a presumption of adequate consideration arises when there is an admission of "value received" in a contract, there is no genuine issue of material fact that defendants overcame the presumption. The trial court did not err in holding that the personal guarantees lacked consideration.

### III. CASE EVALUATION

Plaintiffs next argue that the trial court abused its discretion when it denied their motion to extend the case evaluation acceptance/rejection deadline and awarded case evaluation sanctions in favor of defendants.

A trial court's interpretation of a court rule and ultimate decision to award case evaluation sanctions are questions of law and are subject to de novo review on appeal. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). See also *Ayre v Outlaw Decoys, Inc*, 256 Mich App 517, 520; 664 NW2d 263 (2003). However, the amount of sanctions awarded, including those awarded as reasonable attorney fees, is reviewed for an abuse of discretion. *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009). Arguments alleging that the trial court failed to exercise discretion are also reviewed for an abuse of discretion. *Rieth v Keeler*, 230 Mich App 346, 348;

583 NW2d 552 (1998). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Khouri*, 481 Mich at 526.

## A. CASE EVALUATION DEADLINE EXTENSION

Plaintiffs argue that the trial court failed to exercise its discretion with respect to plaintiffs' motion to extend the case evaluation deadline following its counsel's failure to timely respond due to an internal docketing error. Plaintiffs contend that the denial of their motion prevented them from accepting the award and avoiding case evaluation sanctions and that granting the motion would not have prejudiced defendants.

The trial court did not abuse its discretion in denying the motion to extend the response deadline. On August 29, 2019, the trial court granted the parties joint motion to amend the scheduling order, granting them an additional 30 days to complete discovery. Although under MCR 2.403(L)(1), a party has 28 days to accept or reject an award, and the amended order shortened the case evaluation acceptance/rejection period to seven days. Because both parties wanted and received a 30-day extension to conduct discovery, the trial court presumably shortened the case evaluation response period to keep the case on the original schedule. The court acted within its discretion in furtherance of case management.

Additionally, had the trial court allowed the deadline extension, it would have undermined the fundamental goals of case evaluation "to encourage settlement, deter protracted litigation, and expedite and simplify the final settlement of cases." *Rohl v Leone*, 258 Mich App 72, 75; 669 NW2d 579 (2003). The trial court's conclusion was consistent with the purpose of the court rules—a fair and efficient resolution of the matter. Nothing in the case evaluation rules required the court to permit plaintiffs' untimely acceptance of the case evaluation award, particularly when plaintiffs were aware that defendants had not accepted the award. This call is left to the trial court's discretion, and we cannot conclude that this denial amounted to an abuse of discretion.[4] *Rieth*, 230 Mich App at 349-350.

Plaintiffs are incorrect to suggest that defendants would not be prejudiced if the deadline had been extended. The well-established rules of case evaluation are designed to prevent gamesmanship by not disclosing each party's acceptance or rejection of the case evaluation until after the deadline has expired. MCR 2.403(L)(2). Had the court granted the extension, plaintiffs would have known that defendants rejected the panel's evaluation. If plaintiffs were allowed to retroactively change their rejection to an acceptance, then the case evaluation process would have been tainted. We cannot conclude that the trial court abused its discretion in denying the motion to extend the response deadline.

## B. CASE EVALUATION SANCTIONS

---

[4] By analogy, the Michigan Court Rules do not require that a trial court set aside an order due to a docketing error. Under MCR 2.612(C)(1)(a), a trial court is authorized to relieve a party from an order upon a showing of mistake, inadvertence, surprise, or excusable neglect. However, MCR 2.612(C)(1)(a) was not "designed to relieve counsel of ill-advised or careless decisions." *Limbach v Oakland Co Bd of Co Road Comm'rs*, 226 Mich App 389, 393; 573 NW2d 336 (1997) (citation and quotation marks omitted).

Plaintiffs next argue that the trial court abused its discretion in awarding case evaluation sanctions when the award was not in the interests of justice, considering that it was plaintiffs' counsel's own error of failing to respond within the required seven days to accept the award. Plaintiffs contend that by sanctioning plaintiffs for failing to timely accept the case evaluation award, the trial court was rewarding defendants, who intended to reject the case evaluation award; these actions thwart the purpose of the rule, which is to encourage settlement by rewarding parties who accept case evaluation awards.

In particular circumstances, "[t]he court may, in the interest of justice, refuse to award an attorney fee under this rule." MCR 2.405(D)(3).[5] The interests of justice exception may apply to "cases involving an issue of first impression or an issue of public interest." MCR 2.405(D)(3)(*ii*). The "interests of justice" exception will be invoked only in "unusual circumstances," and absent these "unusual circumstances," the general rule would apply. *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 338; 602 NW2d 596 (1999). Examples constituting unusual circumstances necessary to invoke the exception are " 'where the law is unsettled and substantial damages are at issue, where a party is indigent and an issue merits decision by a trier of fact, or where the effect on third persons may be significant . . . .' " *Haliw v Sterling Heights*, 266 Mich App 444, 448; 702 NW2d 637 (2005), quoting *Luidens v 63rd Dist Court*, 219 Mich App 24, 36; 555 NW2d 709 (1996). "The common thread in these examples is that there is a public interest in having an issue judicially decided rather than merely settled by the parties. In such cases, this public interest may override MCR 2.405's purpose of encouraging settlement." *Luidens*, 219 Mich App at 36. While the trial court must use its discretion to deny an award, "few situations will justify denying an award of costs under MCR 2.405 in the 'interest of justice.' " *Hamilton v Becker Orthopedic Appliance Co*, 214 Mich App 593, 596; 543 NW2d 60 (1995) (quotation marks and citations omitted).

Here, plaintiffs do not suggest that the law is unsettled, nor do they argue that a significant issue of public policy exists. While the circumstances of when the interest of justice exception may apply are not exhaustive, the common thread in the provided examples is centered on public interest. *Luidens*, 219 Mich App at 36. Plaintiffs' counsel missing the accept/reject case evaluation deadline due to an internal docketing error does not impact the public welfare nor present any of the "unusual circumstances" necessary to invoke the exception. Absent the "unusual circumstances" needed to trigger the interest of justice exception, we cannot conclude that the trial court abused its discretion by awarding sanctions.

Plaintiffs also argue that if the decision to award case evaluation sanctions is upheld, the trial court abused its discretion in awarding attorney's fees. "[T]he burden of proving the reasonableness of the requested fees rests with the party requesting them." *Khouri*, 481 Mich at 528-529. Plaintiffs are only liable for those "attorney fees directly flowing from [their] rejection of the case evaluation—those that accrued after the rejection and which were caused by defendant

---

[5] Our Court has previously looked at how the interest of justice exception under MCR 2.405(D)(3) is applied when applying the interest of justice exception under MCR 2.403(O)(11). See *Sabbagh v Hamilton Psychological Services, PLC*, 329 Mich App 324, 365; 941 NW2d 685 (2019). The interest of justice exception under MCR 2.403(O)(11) was eliminated through a court rule amendment effective January 1, 2022. See Administrative Order No 2020-06 (2021).

having to defend against plaintiff's theory of liability and damage claim." *Ayre*, 256 Mich App at 528, citing MCR 2.403(O)(6)(b).

Defendants requested attorney fees amounting to $21,147.50. Defendants provided their counsel's billing ledgers, which detailed the services provided and at what rate. The trial court noted at the sanctions hearing that defendants' attorney fees included billings for repeatedly reviewing case file materials, such as deposition transcripts, and preparing for oral arguments for their motion for summary disposition well before the scheduled hearing date. Defendants explained that their attorneys had to repeatedly prepare for the case because of the continuous adjournments and delays due to state and local restrictions to combat COVID-19. Moreover, defendants' counsel justified the reasonableness of the hourly rate by explaining that the attorneys handling this matter were in good professional standing and each had over 35 years of legal experience. The trial court addressed each of plaintiffs concerns methodically and ultimately awarded case evaluation sanctions in the amount of $11,000. There is no evidence to suggest that the trial court abused its discretion.

Affirmed.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron